## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 95-DP-00750-SCT

*RONALD CHRIS FOSTER A/K/A RON CHRIS FOSTER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/18/91 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ANDRE DE GRUY |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE, JR. |
| DISTRICT ATTORNEY: | ALLGOOD, FORREST, |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | APPLICATION DENIED - 5/16/96 |
| MOTION FOR REHEARING FILED: | 6/3/96 |
| MANDATE ISSUED: | 1/30/97 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. This matter comes before this Court upon an Application for Leave to File Motion to Vacate Conviction and/ or Death Sentence pursuant to our Post-Collateral Conviction Relief Statute, Miss. Code Ann. § 99-39-1, et seq. (Supp. 1994). The crime underlying Foster's petition for relief is the shooting of a store clerk, George Shelton, during the commission of a robbery. *See Foster v. State*, 639 So. 2d 1263 (Miss. 1994). The procedural history of the case shows that Foster was convicted for the crime of capital murder and sentenced to death on January 18, 1991, in the Lauderdale County Circuit Court for the killing of George Shelton. Foster appealed this decision raising twenty-six assignments of error, among which were the issues of particularized findings for juvenile death penalty recipients, the "robbery-murder-pecuniary gain" aggravator, and the failure to grant certain jury instructions. *Foster v. State*, 639 So. 2d 1263, 1268-70 (Miss. 1994). The conviction was affirmed, and Foster filed a writ of certiorari to the United States Supreme Court, which was denied. *Foster v. State*, 639 So. 2d 1263 (Miss. 1994), *cert. denied*, 115 S.Ct. 1365 (1995). In that certiorari petition, Foster again raised the issues of particularized findings for juvenile death penalty recipients, and whether the same facts can support two separate aggravating circumstances. A petition for rehearing ensued, and was also denied. *Foster v. State*, 639 So. 2d 1263 (Miss. 1994), *reh'g denied*, 115 S.Ct. 1992 (1995). The federal district court for the Southern

District of Mississippi had stayed his execution, to which the State has entered a motion to vacate stay. The State's motion was recently granted on November 8, 1995.

¶2. On July 21, 1995, Foster filed with this Court his motion for post-conviction collateral relief. We stayed the execution on July 24, 1995, and now, we turn to the merits of his petition. Foster advances one main issue-- that he received ineffective assistance of counsel at the trial during the sentencing phase, and then again at the appellate level. Bear in mind the following: At trial, Foster was represented by Michael R. Farrow, Bill Cunningham, and James B. Wright. His past attorneys, on direct appeal, include James W. Craig, Jane E. Tucker, and Andre de Gruy, all employees of the Mississippi Capital Defense Resource Center. Farrow and Wright filed appearances for Foster's direct appeal. Currently, for the Application for Post Conviction Relief Motion, Andre de Gruy is Foster's primary counsel. Craig and Tucker are still Foster's attorneys because their Motion to Withdraw was denied by this Court.

¶3. Thus, in this Application presently before the Court, we essentially have one attorney of the Resource Center alleging that Foster received ineffective assistance of counsel from members of his own firm. The State has advanced the position that this action by the Resource Center broaches an ethical conflict in violation of the Rules of Professional Conduct, especially Rule 1.10, comment, definition of "firm." We need not address the State's ethical conflict issue, as there are other procedural avenues readily available to the State to air its legitimate and pressing concerns.

¶4. A review of the issues raised by Foster reveals many to be barred, but all are without merit. We must deny Foster's application for post-conviction collateral relief.

## ISSUE

**WHETHER FOSTER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL?**

## DISCUSSION OF LAW

### Post-Conviction Collateral Relief

¶5. Post-conviction proceedings are for the purpose of bringing to the trial court's attention facts not known at the time of judgment. *Smith v. State*, 477 So. 2d 191 (Miss. 1985). The Post-conviction Collateral Relief Act provides a procedure limited in nature to review those matters which, in practical reality, could not or should not have been raised at trial or on direct appeal. *Turner v. State*, 590 So. 2d 871 (Miss. 1991); *Cabello v. State*, 524 So. 2d 313, 323 (Miss. 1988).

¶6. Procedural bars of waiver, different theories, and res judicata and exception thereto as defined in post-conviction relief statute are applicable in death penalty post-conviction relief application. *Lockett v. State*, 614 So. 2d 888 (Miss. 1992), *cert. denied,* 114 S. Ct. 681 (1994). We have repeatedly held that a defendant is procedurally barred by waiver from making a challenge to a capital sentencing scheme as a whole in a petition for post-conviction relief where the issue was capable of determination at trial and/or on direct appeal but was not raised, and defendant failed to show cause or actual prejudice for not raising the issue on direct appeal. *Lockett v. State*, 614 So. 2d 898 (Miss. 1992), *cert. denied,* 114 S. Ct. 681 (1994); *Smith v. State*, 477 So. 2d 191 (Miss. 1985). Post-conviction relief is not granted upon facts and issues which could or should have been litigated at trial and on appeal. "The doctrine of res judicata shall apply to all issues, both factual and legal, decided at trial and on direct appeal." Miss. Code Ann. § 99-39-21(3) (Supp. 1994). We must caution that other issues which were either presented through direct appeal

or could have been presented on direct appeal or at trial are procedurally barred and cannot be relitigated under the guise of poor representation by counsel.

## Ineffective Counsel Claim

¶7. "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The test is two pronged: *The defendant must demonstrate that his counsel's performance was deficient, and that the deficiency prejudiced the defense of the case*. *Strickland*, 466 U.S. at 687; *Washington v. State*, 620 So. 2d 966 (Miss. 1993). "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Stringer v. State*, 454 So. 2d 468, 477 (Miss. 1984), *citing Strickland v. Washington*, 466 U.S. at 687. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Stringer* at 477, *citing Strickland,* 466 U.S. at 688; *Tokman v. State*, 564 So. 2d 1339, 1343 (Miss. 1990).

> Judicial scrutiny of counsel's performance must be highly deferential. (citation omitted) . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

*Stringer* at 477; *Strickland,* 466 U.S. at 689. In short, defense counsel is presumed competent. *Johnson v. State*, 476 So. 2d 1195, 1204 (Miss. 1985); *Washington v. State*, 620 So. 2d 966 (Miss. 1993).

¶8. Then, to determine the second prong of prejudice to the defense, the standard is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mohr v. State*, 584 So. 2d 426, 430 (Miss. 1991). This means a "probability sufficient to undermine the confidence in the outcome." *Id*. The question here is

> whether there is a reasonable probability that, absent the errors, the sentencer-- including an appellate court, to the extent it independently reweighs the evidence-- would have concluded that the balance of the aggravating and mitigating circumstances did not warrant death.

*Strickland*, 466 U.S. at 695.

¶9. There is no constitutional right then to errorless counsel. *Cabello v. State*, 524 So. 2d 313, 315 (Miss. 1988); *Mohr v. State*, 584 So. 2d 426, 430 (Miss. 1991) (right to effective counsel does not entitle defendant to have an attorney who makes no mistakes at trial; defendant just has right to have competent counsel). If the post-conviction application fails on either of the *Strickland* prongs, the proceedings end. *Neal v. State*, 525 So. 2d 1279, 1281 (Miss. 1987); *Mohr v. State*, 584 So. 2d 426 (Miss. 1991).

## The Mitigation Evidence

¶10. Foster claims that his trial counsel failed to adequately investigate and present mitigation evidence, resulting in ineffective assistance of counsel at the sentencing phase. This is not a case where counsel failed to offer any mitigating circumstances or evidence to the contrary. In addition to the testimony and evidence revealed during the guilt phase, Foster's counsel also introduced the testimony of Stevson Foster and Lillie Mae Foster during the sentencing phase. The list of circumstances or factors offered for mitigation and the closing argument of counsel made at the end of the sentencing phase show that counsel did indeed investigate Foster's case for mitigation.

¶11. The areas of mitigation on which Foster focuses his complaint are his mental health, intelligence level, and alcohol use. Based on the arguments presented by Foster, the affidavits included in Foster's application, and the deference given to trial counsel's abilities, the State contends that Foster has failed to meet the requirements of proving deficiency and prejudice.

## 1. Yet More Psychological Testing

¶12. At trial, Attorney Farrow asked the jury to consider the following mitigating factors:

1. Ron Chris Foster was only 17 at the time of the crime;

2. The defendant has no significant history of criminal activity;

3. The crime was committed while the defendant was under the influence of extreme mental or emotional disturbance;

4. The defendant acted under extreme duress and or under the substantial domination of another person;

5. The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired;

6. The defendant has limited intelligence;

7. The defendant did not carry a weapon to the crime scene;

8. As a youth the defendant suffered a head injury that impairs his mental capacity;

9. Any circumstance or combination of circumstances surrounding the offense which reasonably mitigates against imposition of the death penalty;

10. Any circumstance or combination of circumstances surrounding the defendant's life and character which reasonably mitigates against imposition of the death penalty;

11. That the defendant was intoxicated during the commission of the crime;

12. That the defendant has an eighteen month old son;

13. Any other circumstance which you may deem mitigating.

¶13. Foster faults Farrow for not further investigating his psychiatric condition. Farrow filed a Motion for

Psychiatric Examination which was granted by the trial court. The order requested the Whitfield psychiatrists to render an opinion regarding the present competency of Foster in relation to the *McNaughten* criteria.

¶14. Now, Farrow is questioned for not providing the jury a psychological report prepared by a neutral expert at Whitfield Mental Institution per the order stated above, and in its stead, providing school records, to demonstrate Foster's limited intelligence level. Foster claims that had the jury been shown the Whitfield Report, they would have discovered that he had an I.Q. of eighty, and the mental age of a thirteen year old. He believes that these facts would have shown that he suffered from a mental disease or defect that impaired his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. Perhaps, the following language, from the Whitfield Report, will explain why Attorney Farrow chose not to introduce it into evidence:

> It was the unanimous opinion of the staff present that Mr. Foster did have a rational as well as factual understanding of courtroom proceedings and would be able to assist his attorney in preparing a defense. It was also our unanimous opinion that he knew the difference between right and wrong in relation to his actions at the time of the crime.

> At no time during our observation of him here has Mr. Foster displayed any symptom of psychotic disorder or organic mental disorder. Our ward observations, former mental status observations, and psychological testing all supported the diagnosis of Conduct Disorder and Personality Disorder with Antisocial and Narcissistic Features. These diagnoses reflect an individual who tends to disregard the rules of society and places his own needs and desires ahead of those of other people. Mr. Foster tends to over-emphasize his own importance and prowess and minimize his responsibility for his behavior and its consequences. Because of these personality traits he may not always choose to cooperate with his attorney or with the court, but I believe that he is capable of cooperating if he chooses to. He has been involved in physical altercations both in the jail and here and this behavior may well continue.

¶15. This is the kind of report that would once and for all settle the question of whether Foster had the capacity to conform his behavior to the requirements of the law; and that answer would not be favorable to Foster. Admitting such a damaging informational document into evidence would surely leave the jury with the impression that Foster knew right from wrong and he could not care less about his actions or the consequences thereof. It would defeat his entire defense strategy that others encouraged and convinced him to jump over the counter and rob the store clerk, and that his feeble mind was too weak not to succumb to the influence of others. Defense counsel's tactical decision not to investigate psychological evidence did not deprive defendant of effective assistance of counsel at sentencing phase of capital murder trial where defense counsel could have judged that psychological report would have been harmful. *Wiley v. State*, 517 So. 2d 1373 (Miss. 1987), *cert. denied*, 486 U.S. 1036, *reh'g denied*, 487 U.S. 1246 (1988). Nothing in this report would support an argument that a reasonable attorney would present such damaging information to the jury or conduct further investigation into Foster's mental state. *Ake v. Oklahoma*, 470 U.S. 68 (1985), sets forth the framework whereby indigent defendants are entitled to independent expert assistance. However, unlike *Ake*, Foster did not attempt to present the insanity defense, and the State did not argue future dangerousness. The State did not use expert testimony regarding Foster's mental health; therefore, Foster needed no assistance for cross-examination. The doctors at Whitfield, after forty-four days of examination and observance, opined that Foster was determined to be a violent and uncooperative

person capable of choosing to conform. Put another way, Foster was violent and uncooperative by choice. The Whitfield doctor's examination revealed that Foster was competent to stand trial, completely sane at the time of the offense, and totally free of any medically cognizable mental dysfunction. Thereafter, Foster had no good faith argument to request further psychiatric/psychological expert assistance for purposes of mitigation. Based on this report by court-appointed, neutral experts, Foster was mentally sound but in need of an attitude adjustment. In no way could such information by deemed mitigating.

¶16. The State points out that Foster has presented no evidence that counsel did not inquire further about such possibilities from the doctors at Whitfield. Foster has not explained how the additional expert assistance could have been made available to an indigent defendant at trial following the report returned by neutral experts. Foster's only support comes from the affidavit of Dr. Zimmerman. Dr. Zimmerman supports the diagnosis of the experts at Whitfield, but he claims that such a diagnosis could be used for mitigation. Upon reading the explanation of the diagnosis presented by the court-appointed, neutral experts at Whitfield, and considering the convenient explanation presented by Foster's own expert, the State contends that the Whitfield explanation is more plausible. We agree. *See McCoy v. Cabana*, 794 F.2d 177, 183 (5th Cir. 1986) (decision to introduce or withhold a psychiatric report usually considered a tactical decision).

¶17. Attorney Farrow should be commended for circumventing such a document, and still devising a trial strategy to let the jury understand that Foster had low intelligence (via school records) and had suffered two head injuries which resulted in strange behavior thereafter (via testimony from his parents). Generally,

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigations. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 690-91. A decision to introduce or withhold a psychiatric report is a tactical decision. *Wiley v. State*, 517 So. 2d 1373 (Miss. 1987), *cert. denied*, 486 U.S. 1036, *reh'g denied*, 487 U.S. 1246 (1988); *Marks v. State*, 532 So. 2d 976 (Miss. 1988) (defendant did not establish ineffective assistance of counsel where record indicated that psychiatric examination was performed, but results were not shown, and evidence indicated that defendant's alleged diminished capacity, if any, resulted at least in part from voluntary intoxication); *McCoy v. Cabana*, 794 F.2d 177, 183 (5th Cir. 1986); *Johnson v. Cabana*, 661 F.Supp. 356 (S.D.Miss.), *aff'd*, 818 F.2d 333 (5th Cir.), *cert. denied*, 481 U.S. 1061 (1987) (trial counsel's failure to present mitigating evidence of mental impairment did not render assistance ineffective where the failure was not based on error or incompetence but, rather, on considered conclusion that the evidence was insubstantial).

¶18. We find that Farrow met his burden of behaving as reasonable counsel. He ordered a psychological evaluation. He got the results. He knew the evidence would not be absolutely convincing for the jury. From this document, the more plausible conclusion was that Foster had an attitude problem rather than an emotional disturbance. Thus, Farrow chose an alternate course to present the "limited intelligence" and "mental health" mitigators. We find that Farrow made a reasonable decision not to pursue further

psychological testing once the results from the Whitfield Report were reported to the court. This was a reasonable decision not only at the time it was made, but even in hindsight.

¶19. There was no reason to delve further into the exact level of his I.Q.. His school transcripts revealed that he was both a poor and truant student. This factor was presented to the jury as mitigator number 6. His parents' testimony also leaves the impression that they weren't exactly stellar in their intellect either. A juror may not comprehend the implication of Borderline Intellectual Function evidenced by an I.Q. of eighty; however, the average juror does comprehend the failure to complete eighth grade, grades like C and D, yearly averages of 58 in English, 46 in math, 52 in history, 62 in industrial arts, 74 in science, and forty days of missed school. A juror also comprehends the educational environment of a defendant whose father cannot read or write, and parents who cannot understand or respond to simple questions. The record reflects that Foster's father could not even read the letters on his son's report card enough to determine whether his son was doing well or poorly in school. Once again, Foster has failed to show deficiency and prejudice. Nor did Farrow need to further investigate the two head injuries Foster suffered as a youth. His parents' testimony revealed that the injuries occurred and Foster acted strangely thereafter. In light of the Whitfield Report which indicated that no organic mental disorder existed, Farrow cannot be faulted for not further investigating this avenue, as it would lead to a dead-end. Neither Farrow, nor his current attorneys, have been able to show any kind of medical documentation evidencing that Foster changed in personality due to those head injuries. The parental pleas and the school transcripts were the "the best argument he could make given the circumstances under which he found his client." *See Faraga v. State*, 514 So. 2d 295, 308 (Miss. 1987) (where it was alleged that counsel admitted too much, but the Court found that his decision was tactical in order to gain jury's confidence and further found that failure to present expert psychological testimony at sentencing phase was not ineffective assistance of counsel).

¶20. In the past, we have reversed and remanded death penalty cases involving ineffective counsel claims where all the defense counsel had done was admitted to the guilt and begged the jury for mercy. *Woodward v. State*, 635 So. 2d 805, 809 (Miss. 1993). In *Woodward,* the psychological testing revealed that Woodward could differentiate between right and wrong, but nonetheless suffered from a severe mental disturbance at the time of the crime. *Id.* at 810. We found that trial counsel was ineffective in not realizing that they could offer the psychiatrist's testimony without opening the door to unlimited character evidence. *Id.* at 810.

¶21. Here, unlike Woodward, Foster's psychiatric evaluation from Whitfield did not indicate that he was suffering from a severe mental disturbance at the time of the crime. Thus, to introduce it would be to introduce all of the damaging statements as previously discussed. Moreover, Attorney Farrow did not throw his client upon the mercy of the court. He introduced school records and the testimony of his parents who stated their love for him. He discussed the fact that Foster did not bring a weapon to the store. He mentioned that Foster had a very young child. He emphasized that Foster had drunk twelve beers before committing the crime. Again, we find that Attorney Farrow acted reasonably.

¶22. Based on the foregoing, we find that under the first prong of the *Strickland* test Farrow's conduct was not deficient in presenting the "limiting intelligence" and "mental health" mitigators. There is no need to proceed to the second prong of prejudice due to deficiency, as none existed when foregoing the Whitfield Report.

## 2. Man is a Product of His Environment-- So it Can't be His Fault

¶23. Farrow is also questioned for not presenting more information about Foster's upbringing, childhood, and dysfunctional family life. Foster claims that had Farrow inquired more into his past, and shown that his father was an alcoholic, the jury would have understood what a traumatic childhood he must have lived, and thus, been able to weigh another mitigator into better explaining the robbery-murder.

¶24. Foster essentially claims that more witnesses than just his mother and father should have been called to the stand. His siblings and friends should have also testified, and his parents should have been better prepared to testify. Foster claims that his siblings would have told the jury that his father was a drunkard and his older brothers served as his drinking mentors. His friends would have attested to the fact that he started drinking at age twelve and that his resulting abrasive behavior cost him their companionship. Foster claims that this part of his family history would have supported the mitigating factors of "lack of self-control, " "extreme disturbance," and inability to "conform his conduct to the requirements of the law."

¶25. Foster cites to the lone dissenter in *Pruett v. State*, 574 So. 2d 1342, 1347-48 (Miss. 1990) (Anderson, J., dissenting), who alone stood for the proposition that defense counsel has a critical and crucial duty in capital cases to conduct extensive pretrial investigations in the defendant's life history, emotional and psychological make-up, upbringing, relationships, friendships, formative and traumatic experiences, personal psychology and present feelings. We are not sure what such information would have to do with the condition that Foster was in at the time he decided to rob. Prosecution witness, Vincent Harris, testified that Foster drank twelve beers by the time he made a decision to rob the store. Farrow was more than happy to seize upon such testimony and let the jury know that the fact that Foster consumed alcohol before entering into the crime was conceded for the purpose of meeting the mitigator of intoxication. Farrow made the following argument during closing:

> Well, ladies and gentlemen who said he did use alcohol? Who did ? Who said he'd had twelve beers that night? Who said it? You know who said it. Vincent Harris said it. So was he intoxicated? Would twelve beers make a seventeen year old with his frame intoxicated? That's another mitigating factor for you to consider because you can believe Vincent Harris on that. The State wants you to believe Vincent Harris.

It would have been a disservice to have friends and family brought in to explain the longstanding history of alcoholism because a jury could have inferred a high tolerance level and not credited the twelve beers as being enough to intoxicate such a hard drinker. The affidavits do not paint a picture of alcoholic stupor and abusive behavior as Foster claims. Where there is no showing that interviewing additional witnesses would produce a different outcome, petitioner has failed to show that he was denied right to effective assistance of counsel. *U.S. v. Green*, 882 F.2d 999 (5th Cir. 1988); *See also Neal v. State*, 525 So. 2d 1279 (Miss. 1987) (defendant was not denied effective assistance of counsel due to counsel's failure to call additional witnesses at sentencing phase to prove details of defendant's life, where counsel called defendant's mother as witness, and mother told defendant's life story). We hold that Foster's counsel made reasonable, strategic decisions to present the most persuasive evidence in mitigation and to cease investigation when the results were no longer helpful. As set forth in *Strickland* and adopted by this Court in *Stringer*, counsel at sentencing provided adequate and effective assistance. There is no merit to this issue.

### 3. Whether Defense Counsel's Failure to Request Transfer to Youth Court Amounted to the Ineffective Assistance of Counsel

¶26. Foster argues that the death penalty is unconstitutional due to a lack of particularized finding by the

circuit court in retaining original jurisdiction over Foster and not transferring him to the youth court. This issue has already been challenged on direct appeal. *See Foster v. State*, 639 So. 2d 1263, 1292 (Miss. 1994). Foster has merely camouflaged the issue by couching the claim as ineffective assistance of counsel.

¶27. We have repeatedly held that a defendant is procedurally barred by waiver from making a challenge to a capital sentencing scheme as a whole in a petition for post- conviction relief where the issue was capable of determination at trial and/or on direct appeal but was not raised, and defendant failed to show cause or actual prejudice for not raising the issue on direct appeal. *Lockett v. State*, 614 So. 2d 898 (Miss. 1992), *cert. denied,* 114 S. Ct. 681 (1994); *Smith v. State*, 477 So. 2d 191 (Miss. 1985). Thus, the issue of whether the death penalty is unconstitutional due to a lack of particularized finding in the youth court is a procedurally barred issue. We cannot consider the merits of this issue, as it was already dealt with on the direct appeal. Foster must remember that post-conviction relief is very limited and deals with only those issues undetectable at trial or the appellate level. For the purposes of this petition, the only question that Foster could pose is whether Foster's trial attorney was ineffective by failing to request a transfer proceeding from circuit court to youth court, and if ineffective, whether this error prejudiced his defense.

¶28. The governing statute at the time of Foster's trial allowed "the circuit judge, upon a finding that it would be in the best interest of such child and in the interest of justice, . . . at any stage of the proceedings prior to the attachment of jeopardy, [to] transfer such proceedings to the youth court for further proceedings . . . ." Miss. Code Ann. § 43-21-159 (Supp. 1994). As we stated in the direct appeal, a youth court generally engages in a certification procedure before transferring the juvenile to a circuit court, however, "[u]nder Mississippi law, these juvenile certification procedures do not take place if a child commits an act, 'which if committed by an adult would be punishable under state or federal law by life imprisonment or death, . . . because original jurisdiction is vested in the circuit courts under such circumstances.'" Miss. Code Ann. § 43-21-151(1) (Supp. 1992). *Foster v. State*, 639 So. 2d at 1293. Thus, under the law, Foster at age 17, could be "tried and convicted of a capital offense and receive the death sentence, without there ever having been a preliminary determination in the youth court that he should be tried as an adult." *Foster v. State*, 639 So. 2d at 1293.

> Mississippi law clearly allows a person under the age of eighteen years, charged with a capital offense, to request by proper motion that the circuit court conduct a special hearing, considering the person's age, lack of prior offenses, likelihood of successful rehabilitation and other factors which favor sending the case to the youth court rather than continuing in circuit court. Had such a procedure been requested, Foster would have had the same individualized consideration in circuit court that would have been available to him in a certification hearing in the youth court.

*Foster v. State*, 639 So. 2d at 1297. Thus, we must analyze the issue in terms of whether Farrow was reasonable for not requesting such a motion, and whether such failure resulted in prejudicing Foster's defense.

¶29. In this regard, Foster's application for post-conviction collateral relief cites no authority stating that it is ineffective for counsel to not request a special hearing to determine transfer to youth court. He merely states that trial counsel must not have known that this procedure was available to him, and that failure to know this constitutes a failure to know the law, and thus, is a textbook example of deficiency. The record in no way indicates that trial counsel was unaware of the statutes in regard to juvenile court versus circuit court. In fact, the record shows that Foster's counsel recognized that juvenile law concerning confessions does not

apply in a suppression hearing when the defendant is being tried as an adult, but he was making a good faith argument for an extension of the law. As we previously stated, the issue of whether a capital case juvenile is transferred back to a youth court is within the sound discretion of the circuit judge.

¶30. Nevertheless, for the sake of argument, even assuming trial counsel's failure to request such a finding was legally unreasonable, there was no prejudice or harm to Foster. Foster's claim fails because he has not shown prejudice. The decision to transfer from circuit court to youth court is within the sound discretion of the trial judge. This fact is evidenced by the word "may" used in the statute. The standard upon which the trial court may make such a decision is "in the best interest of such child and the interest of justice." Had Farrow requested such a finding, the trial judge would have found that Foster was seventeen and one-half years old, on the brink of eighteen years of age, and while he did not have any significant criminal history, he had a violent, selfish nature, exhibited uncooperative tendencies and according to the Whitfield Report, had the maturity to know right from wrong. Attorney Farrow would be hard-pressed to convince the judge that his client would not have committed these types of acts six months from the time of the crime, and it was only because he lacked those critical six months that he committed the crimes due to his immaturity. These elements will hardly send a case back to youth court. The United States Supreme Court only requires that there be "individualized" consideration given to capital offenders under eighteen years of age, not necessarily "particularized" findings. *Stanford v. Kentucky*, 492 U.S. 361, 375, *reh'g denied*, 492 U.S. 937 (1989). We find that Foster's age and his lack of a prior history of criminal activity were presented; he did indeed receive individualized consideration as to his maturity and moral culpability. Additionally, counsel made a good faith effort to extend the statutes concerning a juvenile confession where Foster was being tried as an adult. Thus, even if there was no full application of Mississippi's juvenile transfer statute, it was firstly, not required, and secondly, not resulting in any prejudice. The issue is procedurally barred. Alternatively, considering the merits of this issue; we find none exists. No true new issues have been raised. However, any attempt to raise a new legal theory or ground at this point would be procedurally barred. Miss Code Ann. § 99-39-21(2)(Supp. 1994), states:

> (2) The litigation of a factual issue at trial and on direct appeal of a specific state or federal legal theory or theories shall constitute a waiver of all other state or federal legal theories which could have been raised under said factual issue; and any relief sought under this chapter upon said facts but upon different state or federal legal theories shall be procedurally barred absent a showing of case and actual prejudice.

Foster's petition does not meet the requirements to overcome the procedural bar.

¶31. In addition, Foster is attempting to relitigate this issue under a new heading. The true color of Foster's claim is that his death sentence is unconstitutional because he was placed in adult court without particularized findings. His main concern is the particularity of his age. Foster's age was individually considered by the jury. Foster was born January 8, 1972 and committed the crime of capital murder on June 10, 1989 -- i.e. he was seventeen years, six months and two days old. This was no child; this was a man. The jury was asked to consider his age as one of the mitigating circumstances. In addition, the primary concern of the United States Supreme Court regarding the death penalty and defendants under age eighteen was individualized consideration, not particularized findings. *Stanford v. Kentucky,* 492 U.S. 361, *reh'g denied,* 492 U.S. 937 (1989). Such findings only assured such consideration, but the Court did not make such findings constitutionally required. In addition, when the United States Supreme Court determined that the death sentence as per se unconstitutional when applied to children under the age of sixteen, the court

had utilized its statutory provision which allowed certification of a child to be tried as an adult. ***Thompson v. Oklahoma***, 487 U.S. 815 (1988). Therefore, particularized findings cannot be the constitutional key. As for "standards of common decency," the Court stated that out of thirty-seven states recognizing the death penalty, twelve states refusing to allow the death sentence for a seventeen year old was not enough. ***Stanford***, 492 U.S. 361. Common standards of decency within society must not have changed much since ***Stanford*** and ***Thompson*** because the Court denied certiorari in this issue for Foster in 1995. In reality, this claim has been previously determined by this Court on direct appeal. Miss. Code Ann. § 99-39-21(3) (Supp. 1994) reads, "(3) The doctrine of res judicata shall apply to all issues, both factual and legal, decided at trial and on direct appeal." No cause or prejudice standards are included in the statute for a bar of res judicata. This Court addressed this claim on the merits as well as recognizing a procedural bar in ***Foster***, 639 So.2d at 1292-98. In fact, Foster also raised the same claim in his petition for writ of certiorari before the United States Supreme Court, but his petition was denied and rehearing was denied. ***Foster v. Mississippi,*** 115 S.Ct. 1365, *reh'g denied*, 115 S. Ct. 1992 (1995).

¶32. Based on the foregoing arguments, Foster's claim cannot succeed. Foster has restated an old claim under a new title. Foster has not met the standard of ***Strickland*** for an ineffective assistance of counsel claim and no new legal or factual theory has been presented. Foster has not met the requirements necessary to overcome a procedural bar. This repetitive claim falls under the doctrine of *res judicata*.

### 4. Whether Failure to Raise on Appeal The Lower Court's Denial of Certain Jury Instructions Amounted to Ineffective Assistance of Counsel

¶33. At trial, the judge refused defendant's jury instruction D-10 regarding manslaughter. The judge granted instruction SGP-5, over defense objection. Foster, again found his trial counsel as being ineffective. This issue was not raised on appeal. Instruction D-10 read:

> If you find that the State of Mississippi has failed to prove each and every element of the offense of capital murder and of murder beyond a reasonable doubt, and you have therefore found that defendant not guilty of capital murder and of murder, then you may proceed to determine whether the defendant is guilty of manslaughter.

> If you find from the evidence in this case beyond a reasonable doubt that:

> 1. The deceased, George Shelton, was a living person, and

> 2. Ron Chris Foster shot and killed George Shelton without malice aforethought, and

> 3. Ron Chris Foster was under the bona fide belief that it was necessary for him to shoot George Shelton in order to prevent George Shelton from inflicting death or great bodily harm upon Ron Chris Foster, and

> 4. That this belief of Ron Chris Foster was without reasonable cause, and

> 5. Not in necessary self-defense,

> then you shall find the defendant guilty of manslaughter. If the State has failed to prove any one or more of the elements beyond a reasonable doubt, then you shall find the defendant not guilty of manslaughter.

The court granted instruction SG-5 reading:

> The Court instructs the Jury that under the laws of the State of Mississippi a person who provokes a difficulty or attempts to commit a crime upon another, and remains the aggressor throughout that difficulty cannot invoke the plea of self defense; and if you find from the evidence in this case beyond a reasonable doubt that the defendant, Ron Chris Foster, provoked the difficulty with George Shelton, or attempted to commit the crime of robbery upon him, and remained the aggressor in the difficulty, then the defendant cannot now invoke the plea of self-defense.

¶34. Another one of Foster's manslaughter instructions was granted, and so was a self-defense instruction.

¶35. Instruction D-18 reads:

> The court instructs the jury if you find from the evidence that Ron Chris Foster was not engaged in the commission of robbery and that he was not the initial aggressor in the killing of George Shleton [sic], then such killing may be justifiable on the grounds of self defense. If you further find that defendant had reasonable grounds to apprehend a design on the part of George Shelton to kill him or to do him some great bodily harm, and that the danger to Ron Chris Foster was either actual, present and urgent, and that Ron Chris Foster had reasonable grounds to apprehend a design on the part of George Shelton to kill him or to do him some great bodily harm, and that he had reasonable grounds to apprehend that there was imminent danger of such design being accomplished.
>
> It is for the jury to determine the reasonableness of the ground upon which the defendant acts.

Instruction D-17, states in part:

> If you find the defendant not guilty of the crime of capital murder and of murder, and further find from the evidence that Ron Chris Foster was not engaged in the crime of robbery or in commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of George Shelton, then you may continue your deliberations to determine whether or not the defendant is guilty of the crime of manslaughter. The court instructs the jury that manslaughter, as distinguished from murder, is the killing of a human being without malice, in the heat of passion, by the use of a weapon, without authority of law, and not in necessary self-defense.
>
> If you believe from the evidence in this case beyond a reasonable doubt that Ron Chris Foster did :
>
> 1. . . .
>
> 2. Kill George Shelton . . . without malice, in the heat of passion,
>
> 3. Or by the use of a dangerous weapon,
>
> Then, in that event, you may find Ron Chris Foster guilty of the crime of manslaughter. . . .

¶36. The issue of whether the instructions granted or rejected were error by the trial judge should have been raised on the direct appeal. Procedural bars of waiver, different theories, and res judicata and exception thereto as defined in post-conviction relief statute are applicable in death penalty post-conviction relief application. *Lockett v. State*, 614 So. 2d 888 (Miss. 1992), *cert. denied,* 114 S. Ct. 681 (1994).

Post-conviction relief is not granted upon facts and issues which could or should have been litigated at trial and on appeal. "The doctrine of res judicata shall apply to all issues, both factual and legal, decided at trial and on direct appeal." Miss. Code Ann. § 99-39-21 (3) (Supp. 1994). Thus, this Court will not engage in a full blown argument about whether the instructions were erroneously excluded or whether those admitted were sufficient, as those issues are res judicata.

¶37. Though procedurally barred, what is of concern is whether the appellate counsel acted reasonably in not raising the instructions issue on appeal. The standard for considering ineffective assistance of counsel is the same for appellate performance as it is for trial performance. *Culberson v. State,* 580 So. 2d 1136, 1139 (Miss. 1990), *cert. denied*, 502 U.S. 943 (1991). Defense counsel assigned to prosecute appeal from criminal conviction does not have a constitutional duty to raise every nonfrivolous issue requested by defendant. *Jones v. Barnes*, 463 U.S. 745, 749 (1983). Based upon the above jury instructions, we hold that the jury was presented a complete and accurate version of the law in this area via these two instructions. The instructions read as a whole present both theories of manslaughter. *See Cook v. State*, 467 So. 2d 203, 207 (Miss. 1985) (discussing two theories of manslaughter). We find that because the law was so thoroughly covered, Foster's appellate attorneys were completely reasonable for not bickering over some obscure jury instruction being denied. If one instruction is denied, and the essence of the rejected instruction is granted via another instruction, then the issue has been fairly presented to the jury. *Cook v. State*, 467 So. 2d 203, 208 n.2 (Miss. 1985); *Keys v. State*, 635 So. 2d 845 (Miss. 1994) (since the jury did not find itself precluded from considering a self-defense plea, the instructions were valid).

### 5. Whether the Failure to Object to Aggravating Circumstances Constitutes Ineffective Assistance of Counsel

¶38. This issue, including its three subsections, was raised in the direct appeal, and is not suitable for review under a post-conviction collateral relief petition, as it is procedurally barred. Foster counters with the argument that procedural bars do not apply to consideration of aggravating circumstances. Foster attempts to lure this Court into the same dangerous waters of inconsistency which cause the special treatment afforded the "especially heinous, atrocious, and cruel" aggravator. *See Smith v. Black,* 970 F.2d 1383, 386-87 (5th Cir. 1992). The procedural bar established for post-conviction relief can be due to failure to make a contemporaneous objection at trial or on failure to raise the issue on appeal. Such objections and issues are not new. Aggravating circumstances do not get special treatment, but issues receiving inconsistent applications of procedural bars do get special treatment on federal review. Without relaxing the bar, we independently consider the merits of whether failure to object to these three aggravators constituted ineffective assistance of counsel.

### a. The Robbery Aggravator

¶39. Foster believes that because the jury found that he committed capital murder in the commission of the crime of robbery, that this aggravating circumstance duplicates an element of the offense of capital murder, and thereby the double counting is constitutionally infirm for it does not narrow the class of death-eligible defendants in a rational manner. Though procedurally barred, on the merits, this Court has spoken to this exact question in *Leatherwood v. State*, 435 So. 2d 645 (Miss. 1983).

> He [being the defendant Leatherwood] reasons that since robbery is an element of capital murder, that it should not also be used as an aggravating circumstance as permitted under Mississippi Code Annotated section 97-3-19 (Supp. 1982). The appellant suggests that this causes him to begin the

sentencing stage with one aggravating circumstance against him and thus, starts at a disadvantage rather than with a clean slate. He argues that the weighing process is already stacked against him before he even gets up to offer anything in mitigation; and that his practice brings us precariously close to the old ways of mandatory, arbitrary statutes condemned in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed. 2d 346 (1972).

We do not agree with the appellant's contention. Under our capital murder statute, when an accused is found guilty of capital murder arising out of a robbery, he then becomes subject to a jury finding that he should not be executed if the jury feels that the facts justify it. However, his execution is not mandated and the jury may properly find that he should be sentenced to life in prison. They may so find whether the defendant puts on any evidence of mitigating circum stances or not. This is a far cry from the old statute which mandated execution upon conviction of a capital offense.

*Leatherwood v. State*, 435 So. 2d at 650. Because we have already answered this question, there was no reason for counsel to object to the underlying felony being counted as an aggravator. This Court has already upheld the use of underlying offense as an aggravating circumstance in keeping with the United States Supreme Court's ruling in *Lowenfield v. Phelps*, 484 U.S. 231 (1988). This Court adopted *Lowenfield* in *Ladner v. State*, 584 So. 2d 743, 763 (Miss. 1991). *See also* *Pinkney v. State*, 538 So. 2d 329 (Miss. 1988), *cert. granted and judgment vacated by* *Pinkney v. Mississippi*, 494 U.S. 1075 (1990).

## b. The Avoiding Arrest Aggravator

¶40. Foster argues that there was insufficient evidence to prove the aggravator, "[t]he capital offense was committed for the purpose of avoiding or preventing a lawful arrest." First, this claim is procedurally barred under Miss. Code Ann. § 99-39-21. No objection was made on these grounds at trial, and this claim was not raised on appeal. Therefore, without making the necessary showing of cause and actual prejudice, this claim is barred from belated consideration on post-conviction review. Although procedurally barred, alternatively, considering the issue on the merits, this Court has stated:

[i]f there is evidence from which it may be reasonably inferred that a substantial reason for the killing was to conceal the identity of the killer or killings to "cover their tracks" so as to avoid apprehension and eventual arrest by authorities, then it is proper for the court to allow the jury to consider this aggravating circumstance.

Under this construction the Court properly submits this aggravator to the jury if evidence existed from which the jury could reasonably infer that concealing the killer's identity, or covering the killer's tracks to avoid apprehension and arrest, was a substantial reason for the killing.

*Carr v. State*, 655 So. 2d 824, 853-54 (Miss. 1995); *See also* *Chase v. State,* 645 So.2d 829, 856-58 (Miss. 1994); *Hansen v. State,* 592 So. 2d 114, 152-53 (Miss 1991), *cert. denied**, Hansen v. Mississippi,* 504 U.S. 921 (1992); *Lanier v. State,* 533 So.2d 473, 490 (Miss. 1988); *Leatherwood v. State*, 435 So. 2d at 651, *Tokman*, 435 So.2d at 671. At trial, Vincent Harris, Foster's friend, testified that Foster shot Shelton as Shelton attempted to call the police "because George [Shelton] would know his face." Thus, there was evidence from which it could be inferred that Foster killed Shelton to cover his tracks or conceal his identity. At the point Foster shot Shelton, Foster had wrested away the gun, had complete possession of the gun, and could have walked out of the store without further interference from

Shelton. He shot Shelton as he tried to place a phone call to the police. Thus, it appears that the substantial reason behind the killing was for the purpose of avoiding or preventing a lawful arrest. Therefore, Foster's counsel was not ineffective in not challenging this aggravator.

¶41. Again, this issue is procedurally barred, and alternatively, on the merits, it also fails.

### c. The "Pecuniary Gain" Aggravator

¶42. Foster contests the double use of the "robbery" and "pecuniary gain" aggravators. This claim was already discussed on appeal, and found to be meritless. *Foster v. State*, 639 So. 2d at 1298-99. Thus, again we find this issue is procedurally barred as it was either capable of or determined on appeal. Miss. Code Ann. § 99-39-21(3) (Supp. 1994). Even though subject to *res judicata*, the only question we can address is whether the failure to object to the weighing of the "robbery" aggravator and the "pecuniary gain" aggravator constitutes ineffective assistance of counsel. Foster cites to *Willie v. State*, 585 So. 2d 660 (Miss. 1991), as holding that a jury cannot doubly weigh the commission of the underlying felony and the motive behind the underlying felony as separate aggravators. This is true. However, this principle is only applicable *prospectively*. *Willie v. State*, 585 So. 2d 660, 681 (Miss. 1991); *Jenkins v. State*, 607 So. 2d 1171, 1182-83 (Miss. 1992); *Foster*, 639 So. 2d at 1298. "Foster was convicted and sentenced in January 1991. *Willie v. State* was handed down in July 1991." *Foster*, 639 So. 2d 1263, 1298 n.3 (Miss. 1994). Thus, at the time of Foster's trial in January 1991, his counsel had no basis to object because *Willie,* which prohibits the double counting for the same conduct, applies prospectively, as of July 1991. The same clear explanation was given by this Court in *Mack v. State*, 650 So.2d 1289, 1326 (Miss. 1994); *Chase*, 645 So.2d at 858-59; *Conner v. State*, 632 So.2d 1239, 1269 (Miss. 1993), *cert. denied*, *Conner v. Mississippi*, 115 S.Ct. 314 (1994); *see also Carr,* 655 So.2d at 852. Therefore, under the law at the time of the trial, Attorney Farrow cannot be said to have been in error for not objecting to the stacking.

### 6. Whether Trial Counsel's Failure to Object and Otherwise Preserve Reversible Error Constitutes Ineffective Assistance of Counsel

¶43. Here, Foster puts in a vague overly broad catch-all assignment of error in his petition for post-conviction relief. He states that under the "totality of the circumstances" Foster's counsel's effectiveness is lacking as he failed to properly preserve claims in the trial court of numerous issues of judicial and prosecutorial misconduct, citing *Foster v. State*, 639 So. 2d 1263, 1282, 1286, 1287, 1289, 1290, 1291, 1302 (Miss. 1994). Foster believes that these unspecified assignment of errors that exist on the cited pages cumulatively prejudiced his defense. No further argument is provided. "[I]n order to receive a hearing on [a] claim of ineffective assistance, the post-conviction applicant to this Court must demonstrate with **specificity and detail** the elements of the claim." *Woodward*, 635 So. 2d at 808. (emphasis added). Here, Foster has failed to do so and makes us guess at what he is asserting is ineffective counsel. Vague allegations of failure of counsel to object does not meet the burden of proving ineffective assistance of counsel. *Knox v. State*, 502 So. 2d 672 (Miss. 1987).

¶44. In the direct appeal, every assignment of error was deliberated on and addressed by this Court. *Foster v. State*, 639 So. 2d 1263, 1272-1304 (Miss. 1994). Even the assignment of error that alleged that the "cumulative error in this case requires a reversal in Foster's death sentence," was addressed. *Id.* at 1303. Thus, the rehashing of the cumulative errors issue is *res judicata*. The only issue this Court could possibly answer faced with this overly broad and vague assertion is whether the alleged cumulative errors of

counsel was sufficient enough to prejudice Foster's defense. Basically, Foster hopes that this Court will abandon the proof of prejudice requirement as expressed in *Strickland* and adopted in *Stringer* in favor of an inference of prejudice which has been outright rejected by the United States Supreme Court in *United States v. Cronic*, 466 U.S. 648 (1984). *See also* *Schwander v. Blackburn*, 750 F.2d 494, 501-502 (5th Cir. 1985). It is a well known principle that where there is no error in any one of the alleged assignment of errors, there can be no error cumulatively. *Davis v. State*, 660 So. 2d 1228, 1261(Miss. 1995); *Wilburn v. State,* 608 So. 2d 702, 705 (Miss. 1992) (where there is no reversible error in any part, there is no reversible error to the whole). Thus, even on the merits, this issue fails to prove ineffective assistance of counsel.

## CONCLUSION

¶45. Foster's post-conviction collateral relief application is denied for the reasons set forth herein. Foster failed to prove that he was rendered ineffective assistance of counsel at either the trial or the appellate stage.

¶46. **APPLICATION FOR LEAVE TO FILE POST-CONVICTION COLLATERAL RELIEF MOTION TO VACATE CONVICTION AND/OR DEATH SENTENCE DENIED.**

**LEE, C.J., PRATHER, P.J., PITTMAN AND ROBERTS, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. McRAE AND MILLS, JJ., NOT PARTICIPATING.**

### BANKS, JUSTICE, DISSENTING:

¶47. Because I believe that the majority loses sight of our task with regard to this petition and because it makes certain other pronouncements at odds with our statutory death penalty scheme, I dissent. [(1)]

I.

¶48. The petition before us today asks that we grant Foster permission to file a motion for post-conviction relief in the trial court. While he does suggest that the supporting documents filed with us are of sufficient strength to grant him relief today, he does not thereby abandon any claim to have his day in court at the trial level to adduce such additional proof as may be required to convince that court to vacate its judgment. He simply follows the procedure statutorily prescribed which demands that after affirmance by this Court application be made here for permission to seek relief below. Miss. Code Ann. § 99-39-7 (1972).

¶49. As I perceive our task then, the question is not whether there is sufficient proof before us to vacate the judgment but rather whether a colorable claim has been stated which should, in fairness, be presented to the trial court for resolution under the provisions of the act. Put differently and in consonance with our precedents, we must determine whether the petition is "sufficient to show probable cause" for the relief requested. *Rogers v. State*, 241 Miss. 593, 130 So. 2d 856 (1961);[(2)] *Yates v. State*, 189 So. 2d 917 (Miss. 1966). We have granted leave where there was doubt concerning its viability. *Thompson v. State*, 188 So. 2d 239 (Miss. 1966). A grant of leave to file entitles the petitioner to the consideration of the claim by the trial court, not the relief requested. *Rogers v. State*, 241 Miss. at 594. I believe that Foster has

presented a colorable claim of ineffective assistance of counsel during the sentencing phase sufficient for probable cause, and that he should be allowed an opportunity to substantiate that claim in the trial court.

¶50. Foster asserts through affidavits that there was a substantial evidence of familial alcohol abuse as well as expert testimony concerning the effects of that abuse and environment. He asserts that this evidence would have provided substantial support for the mitigating circumstances relied upon by counsel. Trial counsel, inexplicably according to Foster, failed to discover and use this evidence. He also failed to use evidence at hand, the Whitfield report, to the extent that it was helpful to his defense.

¶51. We are dealing with a death penalty decision, one which each individual juror is compelled to make, based upon a personal view of the import of the evidence concerning aggravating and mitigating circumstances. Under these circumstances it is impossible to say with comfort what failures negatively impacted upon Foster's plea for life.[3] It follows that these failings cannot be deemed to have "prejudiced" Foster. It is not for the State or this court to determine which of the expert explanations of Foster's true mental and emotional condition is the more "plausible." Majority opinion, ante p. 11. The matter should be considered by the trial court under the provisions of our Post-Conviction Collateral Relief Act.

## II.

¶52. Additionally, I disagree with the suggestion that the question whether there is a lack of evidence to support an aggravating circumstance is subject to a procedural bar. Our statutory scheme charges us specially with the duty of examining the evidentiary basis for the finding of an aggravating circumstance. Miss. Code Ann. 1972 § 99-19-105 (3)(b). With regard to the sentence, the command is that this Court "shall determine. . .whether the evidence supports the. . .finding of a statutory aggravating circumstance. . . ."*Id*. We cannot avoid that duty by the imposition of a procedural bar. The bar aside in this case, however, I agree with the majority that there was sufficient evidence to support the aggravating circumstances found.

**SULLIVAN, P.J., JOINS THIS OPINION.**

1. I, of course, adhere to the views expressed in the dissenting opinions when this case was originally heard. *Foster v. State*, 639 So. 2d 1263, 1304 (Miss. 1994) (Hawkins, C.J., and Banks, J., dissenting). Those issues are not before us here.

2. While this case and those that immediately follow dealt with Miss. Code Ann. § 99-35-145 (1972) and its predecessors, which spoke to application for leave to file a petition for writ of error coram nobis, the language of that section is verbatim to and the source of the language of § 99-39-7.

3. Three justices of this Court voted to vacate the death sentence and impose a sentence of life imprisonment on initial review. *Foster v. State*, 639 So. 2d 1263 (Miss. 1994).