# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-DR-00588-SCT

*BLAYDE GRAYSON a/k/a BLAYDE N. GRAYSON*
*a/k/a BLAYDE NATHNIEL GRAYSON a/k/a*
*BLAYDE N. AMODEO*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 8/8/1997 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | GEORGE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF CAPITAL POST-CONVICTION COUNSEL |
| | BY: ROBERT M. RYAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE, JR. |
| | JUDY T. MARTIN |
| DISTRICT ATTORNEY: | DALE HARKEY |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | LEAVE TO SEEK POST-CONVICTION RELIEF DENIED - 06/24/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Blayde Grayson was convicted in the George County Circuit Court of the crime of capital murder

during the commission of a burglary and sentenced to death.  Grayson's conviction and sentence were

affirmed by this Court in *Grayson v. State*, 806 So.2d 241 (Miss. 2001), *cert. denied*, 537 U.S. 973, 123 S.Ct. 466, 154 L. Ed. 2d 329 (2002).

¶2. Now properly before this Court are Grayson's Petition for Post-Conviction Relief and a subsequent Supplement/Amendment to Petition for Post Conviction Relief. The State filed its response in opposition to the petition and the supplemental amendment, arguing that the amended petition was filed after the statute of limitations had run, that all issues raised in the amended petition could have been raised prior to the expiration of the statute of limitations and thus are not properly before this Court. By order entered on March 6, 2003, this Court allowed Grayson to supplement his petition for post-conviction relief and the supplement/amendment was filed as a result.

¶3. Grayson's initial petition, filed hastily to comport with this Court's ruling in *Puckett v. State,* 834 So. 2d 676 (Miss. 2002), asserted six grounds for post-conviction relief: (1) purposeful unlawful delay in filing formal charges to obtain uncounseled confession; (2) unconstitutionally defective jury instructions; (3) sentence of death is constitutionally defective; (4) denial of right to effective counsel; (5) disproportionate sentence; and (6) cumulative error. In Grayson's supplemental amendment, he asserts six additional grounds for relief, some of which are duplicative: (7) ineffective assistance of counsel; (8) sentencing verdict fails to reflect aggravating factors beyond a reasonable doubt; (9) death sentence cannot be meted out until time has been served for other offenses committed prior to the capital murder; (10) aggravating factors not included in the indictment; (11) the "avoiding lawful arrest" aggravator was inappropriate in this case and it was fundamental error to present to the sentencing jury; and (12) jury's consideration of pecuniary gain and burglary as aggravators is error. Procedurally and on the merits, we find no error which warrants post-conviction relief for Grayson.

**FACTS**

¶4.    A full recitation of the facts of this case is found in this Court's opinion on direct appeal. *Grayson v. State*, 806 So.2d 241 (Miss. 2001).  In summary, Grayson was arrested for the stabbing death of a seventy-eight year old woman on May 5, 1996.  At that time, Grayson was a fugitive from justice, having walked away for a restitution center in Jackson County several months earlier.  Based on information obtained during interviews of the victim's neighbors, Grayson was located in Florida, where he was also wanted by Florida law enforcement officials in connection with several armed robberies during the same month as the Mississippi murder.  On May 17, 1996, the Escambia County, Florida, sheriff contacted Sheriff George Miller, of George County, Mississippi, and informed Miller that Grayson was in custody there and "wanting to talk with us."  Sheriff Miller and three other law enforcement officers drove to Florida that afternoon, arriving late in the night.  Upon arrival, Sheriff Miller began interviewing Grayson, after  he signed a waiver of his *Miranda* rights.  A short time into the interview, Grayson said that he would rather not talk anymore until he talked to his lawyer.  Sheriff Miller explained that the reason they came down was because they were told that Grayson wanted to talk to them, to which Grayson replied that he "didn't mean to bring you fellows all the way down here for nothing . . .but I need to talk to my lawyer about this–this is a situation."  The sheriff then asked Grayson "you have not been in George County, is that correct? Grayson said "no, sir" and the sheriff asked "Have you got witnesses to that, is that correct?...to which Grayson responded "yes, sir."  Sheriff Miller basically conceded that Grayson had asked for a lawyer four times in approximately four minutes before the interview ended.

¶5.    Grayson was transported back to George County that same night.  Four days later, Grayson asked to speak with Sheriff Miller, at which time he gave a statement admitting that he was at the scene of the crime but that he did not rob or kill the victim, and naming the man who did the killing.  Two days after that,

3

Grayson gave another statement, and agreed to take a polygraph test, which was done the next day. Grayson then admitted that he had killed the victim and later repeated his confession on videotape.

## ANALYSIS

### I. Did the delay in filing of a formal charge against Grayson violate his right to counsel and result in the State obtaining an un-counseled confession?

¶6. Grayson argues that the State delayed the filing of formal charges against him for the purpose of extracting a confession from him, in violation of his constitutional rights. He contends that because the confession should not have been admitted into evidence during his trial, his conviction and sentence should be vacated. The State responds that this claim is barred by the doctrine of res judicata and is procedurally barred from relitigation by Miss. Code Ann. § 99-39-21(3). We agree.

¶7. Grayson made virtually identical arguments during the trial court's hearing of his motion to suppress his statements. He also made the same arguments on direct appeal, in which this Court found that the "trial court's refusal to suppress the statement was not manifest error." *Grayson*, 806 So.2d at 249. Moreover, this issue was one of two made in Grayson's petition for writ of certiorari filed with the United States Supreme Court, which was denied. See *Grayson v. Mississippi*, 537 U. S. 973 (2002).

¶8. "Rephrasing direct appeal issues for post-conviction purposes will not defeat the procedural bar of *res judicata*. The Petitioner carries the burden of demonstrating that his claim is not procedurally barred." *Jackson v. State*, 860 So.2d 653, 660-61 (Miss. 2003) (quoting *Lockett v. State*, 614 So.2d 888, 893 (Miss. 1992) (citations omitted)). This issue is procedurally barred and without merit.

### II. and III. Were Grayson's rights violated by the imposition of a sentence of death based on jury instructions which were constitutionally defective in light of *Tison v. Arizona*?

4

¶9.     Grayson argues that Mississippi's death penalty statutes are unconstitutional in that applying the death penalty to all defendants who are guilty of felony murder ignores the mental state and relative culpability of the defendant, and thus the death penalty is imposed in an unreasonable and inconsistent manner. He further contends that the jury instructions used in his trial and sentencing violated his Eighth and Fourteenth Amendment rights and were contrary to the holdings in *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L. Ed. 2d 1140 (1982), and *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L. Ed. 2d 127 (1987).

¶10.    Grayson again raised the same arguments on direct appeal. This Court held that Miss. Code Ann. § 97-3-19(e), the portion of Mississippi's death penalty statute which provides for the application of the statute to all defendants who are guilty of felony murder, is constitutional. *Grayson*, 806 So.2d at 251-52. This Court further held that Miss. Code Ann. § 99-19-10, which provides that a jury is to determine punishment in capital cases, and lists the aggravating and mitigating circumstances which are to be considered, is constitutional. *Grayson*, 806 So.2d at 252. *See also Stevens v. State*, 867 So.2d 219, 223 (Miss. 2003). Accordingly, this issue is procedurally barred from consideration and cannot be relitigated in a post-conviction collateral relief action. *Id.*; Miss. Code Ann. § 99-39-21(3).

¶11.    Notwithstanding the procedural bar, the record reveals that this issue is also without merit. In order to return a death sentence, the jury must find, beyond a reasonable doubt, at least one of the intent factors contained in Miss. Code Ann. § 99-19-101(7). In the present matter, the jury found all four factors beyond a reasonable doubt, including that Grayson "intended the killing of Minnie Smith take place." In his present arguments, Grayson completely ignores that finding. The jury's finding that Grayson intended to kill Minnie Smith is sufficient under both *Enmund* and *Tison*." *See Walker v. State*, 863 So.2d 25, 26 (Miss. 2003).

5

**IV. and VII.   Was Grayson denied his Sixth Amendment right to effective assistance of counsel within the meaning of *Strickland v. Washington*?**

¶12.    Ineffective assistance of counsel claims are governed by the following principles:

> An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052 (1984).  To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.,* at 688. We have declined to articulate specific guidelines for appropriate attorney conduct and instead have emphasized that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.*

*Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2535, 156 L. Ed. 2d 471 (2003); *Simmons v. State*, 869 So.2d 995, 1000-01 (Miss. 2004); *Stringer v. State*, 454 So.2d 468, 476-77 (Miss. 1984).

¶13.    Grayson argues that his trial counsels' performance was deficient in four areas.[1]  Grayson argues that his trial counsel: (a) failed to adequately investigate mitigation factors and interview potential mitigation witnesses; (b) did not submit physical evidence for DNA analysis; (c) failed to follow the procedures for obtaining a change of venue and his performance at the hearing was deficient; and (d) should have requested a continuance upon the denial of the motion for change of venue, and failure to do so was ineffective assistance of counsel.  Grayson then asserts that counsels' performance was so deficient that Grayson suffered prejudice and, but for those deficiencies, it is likely that the outcome would have been different.

**a) failure to investigate and present mitigating evidence**

---

[1] Although Grayson's petition only refers to "counsel," Grayson was actually represented by two attorneys during his trial: David M. Ishee of Pascagoula was lead counsel and William T. Bailey, Sr. of Lucedale was co-counsel.  David Ishee also represented Grayson in his direct appeal.

¶14.    Grayson argues that during the sentencing phase, counsel only called Grayson's mother and grandmother to testify. He asserts that if counsel had conducted an adequate investigation, counsel would have found an abundance of mitigating evidence, which if presented to the jury, would have led to a different outcome. Grayson points specifically to the available, but unused, mitigating evidence testimony of Dr. Roy W. Deal, a consulting psychiatrist. Grayson contends that his "family background, mental health history, medical history, and numerous other areas relevant to mitigation should have been thoroughly investigated" by counsel and failure to do so amounted to ineffective assistance of counsel.

¶15.    The record reveals that Grayson instructed his counsel not to oppose the death penalty, in the event of a guilty verdict. After the State rested during the guilt phase of the trial, counsel announced Grayson's wishes to the trial court, outside the presence of the jury. The following colloquy is helpful in understanding what transpired in the trial court:

> BY MR. ISHEE: At this time, Your Honor, before we go any further, since it is only about twenty-five minutes to five, we had discussed this matter in chambers earlier. In fact, we've discussed it several times during the week. Mr. Grayson has informed me that if in fact this matter -- he is convicted during the sentencing phase tomorrow, he has instructed me that I am not to fight the death penalty during the sentence phase. Given the choice between death or life without possibility of parole, it is his option to choose the death penalty. And he does not want me to interfere in any way in that. Mr. Grayson has told me that several months ago and he has continued that position throughout my representation of him. Quite frankly, I thought prior to trial that he would change his mind. Once the trial began, he still maintained this position. I spoke with Your Honor about this. We had a conference in chambers about it. And the matter has still continued on. As of the break a little while ago, Mr. Bailey and I took Mr. Grayson and his mother into this room just off the courtroom, we discussed this matter at length. We explained all of his options for appeal. We explained all the options and all the possibilities for the outcome of a jury verdict. He has still informed us that it's his wish that if he is convicted in the sentencing phase that we are to do nothing. Excuse me -- if he is convicted in the guilt phase, we are to do nothing in the sentencing phase in the way of defending the death penalty. And he wishes to request the jury to impose the death penalty.
> . . . .

7

BY MR. HARKEY [District Attorney]: I'm not sure of exactly the extent of the command of Mr. Grayson to his attorneys. <u>Would it include not putting witnesses on, presenting no testimony in mitigation of sentence; and, also, would it include argument of counsel, prohibiting his counsel from arguing one way or another</u>?
. . . .

BY MR. ISHEE: Your Honor, I have never even heard of something like this happening. I've talked to several other attorneys who have done more -- many more death penalty cases than I have. They have not heard of anything like this. And I think that, as far as that goes, I'll have to discuss that with Mr. Grayson as it progresses. <u>I'm not going to just take this for granted</u>. This is something that I'm going to have to take one step at a time as far as what he is going to allow me to do at the sentencing stage of the trial, if in fact it goes that far. But I would ask the Court to consider at least having another attorney confer with him tonight, to make sure that he does understand everything that I've explained to him and make sure that I and Mr. Bailey have not been derelict in our duties.

BY MR. HARKEY: The State has no objection, if that's what they are asking for.

(emphasis added). The trial court and the attorneys then discussed the psychiatric report prepared for defense counsel by Dr. Roy W. Deal, and it was marked as an exhibit. The trial court questioned Grayson regarding his decision, and Grayson confirmed everything counsel had stated. The trial court also asked Grayson's family if they believed he understood the ramifications of his decision, and they said he did. The trial court appointed independent counsel, Robert Shepard, to confer with Grayson regarding his waiver of a defense to the death penalty and recessed the trial until the following morning. The following morning, after conferring with his mother, grandparents and Shepard, Grayson announced in chambers that he had a change of heart and wanted to fight the death penalty. That day, the defense rested, the jury was instructed, heard closing arguments, and returned a verdict finding Grayson guilty of capital murder.

¶16. The next morning additional discussion occurred regarding Grayson's decision to allow his counsel to call only Grayson's mother and grandmother and make a closing argument in mitigation. Counsel Ishee advised the judge, in the presence of Grayson, that he would not put Grayson on the stand during the

sentencing phase, but rather would call only Grayson's mother and grandmother. His stated reason for that decision was that

> I think if I attempted to have him do so, then he would probably make very incriminating statements in front of the jury which would probably tend to cause them to impose the death penalty. In fact, it's my belief he may even ask the jury for the death penalty if I put him on the witness stand. I've informed him of all of this and he's informed me that he does not wish to testify. But he will allow me to go forward with a defense.

The judge then confirmed with Grayson that he agreed with what his attorney had just said. Grayson's mother and grandmother testified during the sentencing portion of the trial. They both described Grayson's family background and the difficulties of his childhood, including physical abuse by a stepfather. They both discussed his mental health history, including a long battle with drug addiction, and his medical history. They also both described him as a non-violent person, who cared about the victim and would never hurt her.

¶17.     Grayson's current argument that his counsels' performance was deficient because they failed to call any mitigation witnesses other than Grayson's mother and grandmother rings hollow. In response, the State points out that counsel did all that they could, within the limitations placed on them by Grayson. The State further asserts that because counsel acted in accord with Grayson's instructions which were contrary to advice of counsel, their performance was not deficient. Evidence regarding Grayson's "family background, mental health history, medical history, and numerous other areas relevant to mitigation" was, in fact, presented during the sentencing trial during the testimony of both Grayson's mother and grandmother.

¶18.     In evaluating a virtually identical ineffective assistance of counsel claim, the Fifth Circuit held that counsel is not ineffective for failing to present any evidence at the punishment phase, pursuant to his client's instructions, proclaiming that "'[M]eaningful discussion with one's client' is one of the 'cornerstones of

9

effective assistance of counsel'" ***Clark v. Johnson***, 227 F.3d 273, 283-84 (5th. Cir. 2000) (quoting ***Martin v. Maggio***, 711 F.2d 1273, 1280 (5th Cir. 1983)). *See also* ***Dowthitt v. Johnson***, 230 F.3d 733 (5th Cir. 2000) (another Texas death penalty case in which the Fifth Circuit reached the same conclusion, stating that "[b]y no measure can ... [the defendant] block his lawyer's efforts and later claim the resulting performance was constitutionally deficient.").

¶19.    The record in this matter is clear.  Grayson was thoroughly advised by his two defense counsel, the trial court, and by independent counsel, Mr. Shepard, of the consequences of his decision.  Grayson blocked his counsels' efforts and cannot not claim deficient performance.  ***Dowthitt***, 230 F.3d at 748; ***Clark,*** 227 F.3d at 284. *See also* ***Williams v. State***, 722 So.2d 447, 450 (Miss. 1998).

¶20.    Grayson additionally argues that counsel was ineffective in failing to perform an adequate investigation, pursuant to ***Wiggins v. Smith***, 539 U.S. 510.  Grayson has failed to present any information regarding the extent of the investigation actually conducted by counsel, or what, if anything, an "adequate" investigation would have revealed.  Grayson fails to include affidavits from his defense counsel regarding the extent of their investigation.[2]  Grayson does include affidavits from several family members, however, none of them state that counsel never questioned them.  This case is clearly distinguishable from the facts in ***Wiggins***.  Wiggins's background can only be described as horrific.  He was starved, neglected, beaten, abused, and raped for most of his childhood, and he had a diminished mental capacity.  Despite all of that, Wiggins had no criminal history prior to the murder.  ***Wiggins***, 123 S.Ct. at 2533, 2537.  From the affidavits submitted by Grayson, his family lived with his stepfather, whose discipline was "excessive," for

---

[2]The record includes numerous references by counsel to conversations they had with Dr. Deal, various family members, and their efforts to prove that Jason Kilpatrick was actually the murderer.

several years. He also battled drug addiction since adolescence. Grayson also had several convictions, including at least one armed robbery, which was reduced in a plea bargain.

¶21. We conclude that Grayson "has not submitted sufficient evidence of a breach of the duty of counsel to investigate and present mitigation evidence as described by the United States Supreme Court in *Wiggins v. Smith*." *Simmons*, 869 So.2d at 1004. We further conclude that counsels' performance was not deficient pursuant to *Strickland v. Washington*, 466 U.S. at 688, 104 S.Ct. at 2064-65.

### b) failure to conduct DNA testing

¶22. Grayson next asserts that counsel was ineffective because they did not submit blood samples and the fingernail scrapings of the victim for DNA analysis. In his statements to law enforcement, Grayson implicated Jason Kilpatrick as the murderer. Grayson contends that had DNA testing been performed, it "might very well have linked Kilpatrick to the crime scene." The State argues that it was sound trial strategy not to have DNA testing done. In his statements to police, Grayson admits to being at the victim's home with Kilpatrick at the time of the crime. Even if DNA analysis revealed Kilpatrick's involvement, it would not prove Grayson's innocence. Additionally, pointing the finger at Kilpatrick, who was not called during trial, was one of the main defense strategies. By conducting DNA testing it may have removed the "empty chair" defense counsel was trying to fill with Kilpatrick.

¶23. Grayson has not shown that counsels' failure to conduct DNA testing was deficient performance. *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064-54. Additionally, Grayson has not demonstrated a reasonable probability that the results of the guilt or sentencing phase of the trial would have been different had DNA testing been done. *Walker v. State*, 863 So.2d at 12-13 (citing *Mohr v. State*, 584 So.2d

11

426, 430 (Miss. 1991)).[3]  Accordingly, Grayson cannot show prejudice.  *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.[4]

### c) motion for change of venue

¶24.    Grayson argues that his counsel failed to follow the procedures for obtaining a change of venue and thus their performance at the hearing was deficient.  The procedures for obtaining a change of venue are set forth in Miss. Code Ann. § 99-15-35, which states,

> On satisfactory showing, in writing, sworn to by the prisoner, made to the court, or to the judge thereof in vacation, supported by the affidavits of two or more credible persons, that, by reason of prejudgment of the case, or grudge or ill will to the defendant in the public mind, he cannot have a fair and impartial trial in the county where the offense is charged to have been committed, the circuit court, or the judge thereof in vacation, may change the venue in any criminal case to a convenient county, upon such terms, as to the costs in the case, as may be proper.

Grayson argues that his counsels' failure to submit any affidavits and their submission of only four newspaper articles constituted constitutional ineffective assistance of counsel.  Grayson asserts that counsel failed to adequately present evidence during the hearing on the motion and the resulting denial of the motion prejudiced him.

---

[3] In *LaFevers v. Gibson*, 182 F.3d 705, 722 (10th Cir. 1999), the petitioner argued that his counsel was ineffective for failing to request DNA testing.  The Tenth Circuit noted that, despite petitioner's assertions, the DNA testing could not prove that he was not at the crime scene or that he was not involved in the murder.  At most it could prove that he was not the one who bled in the house.

[4] In its response, the State points out that post-conviction counsel has not requested DNA testing be done and does not contend that it has been conducted and it exonerates Grayson.  In his reply, Grayson "request[s] that test samples of tissue, fluid or other potential DNA bearing evidence in the hands of the State be made available to Grayson for examination testing by an independent laboratory.  Grayson further requests funds be made available for such examination and testing."  Grayson's request will not be consider as it is not properly before this Court.  M.R.A.P. 22 provides the procedure for requesting expenses such as this.  If Grayson wants the funds for such examination and testing, he should file a proper motion pursuant to M.R.A.P. 22.

¶25. The State correctly argues that the underlying merits of a claim relating to the denial of the motion for change of venue were addressed in Grayson's direct appeal and were found to be without merit. *Grayson*, 806 So.2d at 250-51. "If the merits of the underlying issue have been considered and rejected on direct appeal, then the [petitioner] cannot show deficiency or prejudice in counsel[s]' performance with regard to that issue." *Wiley v. State*, 750 So.2d 1193, 1200 (Miss. 1999).

¶26. Additionally, Grayson's arguments are completely without merit. The record reveals that counsel canvassed the community, but no one would agree to sign an affidavit to support the motion for change of venue. Counsel entered into evidence four newspaper articles regarding the murder and Grayson's arrest. The prosecution agreed to waive the requirements of § 99-15-35 and presented ten witnesses who were randomly selected from the jury pool. The witnesses all stated that neither the prosecution nor the defense had communicated with them regarding the purpose of their testimony. A few of the witnesses testified that they knew either Grayson or the victim. However, all except one testified that they believed Grayson could get a fair trial in George County. Finally, Grayson failed to attach affidavits of people claiming they would have helped with the motion and he has not presented any proof that there was available evidence or testimony not admitted by defense counsel during the hearing. Grayson has failed to show that counsels' performance was deficient, or that he was prejudiced. *Strickland* 466 U.S. at 687, 104 S.Ct. at 2064.

### d) failure to request continuance

¶27. Grayson argues that upon the denial of the motion for change of venue, counsel should have requested a continuance and failure to do so was ineffective assistance of counsel. Grayson asserts that without a continuance, "[t]here was no way to meaningfully assess the effect of the pre-trial publicity or any way to effectively rebut the testimony of the state witnesses that offered evidence at the evidentiary

hearing."[5]  However, Grayson has failed to even allege that there was any publicity in addition to the four newspaper articles submitted during the hearing.  The record reveals that the hearing on the motion for change of venue was held on March 24, 1997.  The four articles were all dated at least ten months prior to that and the trial did not begin until August 4, 1997.  Again, Grayson fails to show that counsels' performance was deficient.  *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065.

### V.  Is the sentence rendered against Grayson disproportionate and unconstitutional?

¶28.    Grayson once again argues that he should be granted a new trial, or new sentencing hearing because the death penalty violates his Eighth Amendment rights, and is disproportionate, based on much the same argument as set forth in issues II and III supra: namely, that the death penalty for felony murder ignores the mental state and relative culpability of the defendant, and that others, convicted of murder during the commission of burglary or armed robbery have been sentenced to life in prison.

¶29.    The State correctly points out that this issue was decided on direct appeal against Grayson. *Grayson*, 806 So.2d at 255.  This Court noted the heinous nature of the crime and specifically held that the "imposition of the death penalty on Blayde Grayson is neither excessive nor disproportionate in comparison to his crime."  *Id.*  This claim is procedurally barred and cannot be relitigated on post-conviction review.  Miss. Code Ann. § 99-39-21(3); *Walker v. State*, 863 So.2d at 28-29 (citing *Wiley v. State*, 750 So.2d at 1200; *Foster v. State*, 687 So.2d 1124 (Miss. 1996); *Wiley v. State*, 517 So.2d 1373, 1377 (Miss. 1987)).  In addition to the procedural bar, the United States Supreme Court and

---

[5] "The record reflects, however, that only one juror (who knew the victim personally) believed that Grayson would be unable to get a fair trial while another admitted to hearing pro-death penalty comments in connection with the case.  Most of the witnesses were unable to recall details of the crime, and none were able to recall significant details of any media coverage of the crime."  *Grayson*, 806 So.2d at 250-51.

14

this Court have found this argument to be without merit. *McCleskey v. Kemp*, 481 U.S. 279, 306-07, 107 S.Ct. 1756, 95 L. Ed. 2d 262 (1987); *Walker*, 863 So.2d at 28-30.

### VIII. Is the sentencing jury verdict fatally flawed because the aggravating factors were not found beyond a reasonable doubt?

¶30.    Grayson asserts that the jury's verdict in the sentencing phase did not state that the aggravators were found beyond a reasonable doubt, and that it did not say that the sentence of death was a unanimous decision.  Grayson argues that his sentence should be commuted to life in prison or he should receive a new sentencing trial due to the jury's improper and inadequate verdict.

¶31.    The handwritten jury verdict reads as follows:

> We, the jury, unanimously find the evidence beyond a reasonable doubt that the following facts existed at the time of the commission of the capital murder:
> (1) That the Defendant actually killed Minnie Smith
> (2) That the Defendant attempted to kill Minnie Smith
> (3) That the Defendant intended the killing of Minnie Smith take place
> (4) That the Defendant contemplated that lethal force would be used.
>
> Next, we, the jury, unanimously find that the aggravating circumstances of:
> (1) the capital offense was committed for pecuniary gain during the course of a burglary.
> (2) the capital offense was especially heinous, atrocious, or cruel
> (3) the capital offense was committed by a person under sentence of imprisonment
> (4) the capital offense was committed for the purpose of avoiding or preventing a lawful arrest.
>
> are sufficient to impose the death penalty and that there are insufficient mitigating circumstances to outweigh the aggravating circumstances and we further find that the Defendant should suffer death.
>
> s/ Jerry D. Hudson
> FOREMAN OF THE JURY

Additionally, the record reveals that the jury was instructed regarding the burden of proof required to find an aggravating circumstance.  Jury instruction S-2A states, in pertinent part:

15

Consider only the following elements of aggravation in determining whether the death penalty should be imposed:

(1) Whether the capital offense was committed for pecuniary gain during the course of a burglary;
(2) Whether the capital offense was especially heinous, atrocious, or cruel;
(3) Whether the capital offense was committed by a person under sentence of imprisonment;
(4) Whether the capital offense was committed for the purpose of avoiding or preventing a lawful arrest.

You must find, beyond a reasonable doubt, that one or more of the preceding aggravating circumstances existed in this case to return the death penalty. If none of these aggravating circumstances are found to exist, the death penalty may not be imposed, and you shall write the following verdict on a sheet of paper:

¶32. The State first argues that this issue is procedurally barred because it was not raised at trial or on direct appeal. Miss. Code Ann. § 99-39-21(1); *Holland v. State*, 705 So.2d 307, 352 (Miss. 1997) (same claim barred from consideration); *Foster*, 687 So.2d at 1139-40. Without waiving that objection, the State argues that this Court has addressed this exact claim in *Williams v. State*, 684 So.2d 1179 (Miss. 1996), where we stated:

This Court has held on numerous occasions that when a trial court instructs the jury, it is presumed the jurors follow the instructions of the court. *See Crenshaw v. State,* 520 So.2d 131 (Miss. 1988); *McFee v. State,* 511 So.2d 130 (Miss. 1987); *Johnson v. State,* 475 So.2d 1136 (Miss. 1985).

Stated differently, courts assume that juries follow the instructions. *Johnson v. State,* 475 So.2d 1136, 1141 (Miss. 1985). "Our law presumes the jury does as it is told." *Williams v. State,* 512 So.2d 666, 671 (Miss. 1987) (citations omitted). "To presume otherwise would be to render the jury system inoperable." *Johnson,* 475 So.2d at 1142.

This Court must presume the jury did as it was instructed to do and that it found the existence of each of the three aggravating circumstances "beyond a reasonable doubt." This Court agrees with the analogy made by the State concerning jury verdicts in cases less than capital. In such cases, the jury is instructed in writing they must find the defendant guilty of the crime charged beyond a reasonable doubt. The usual written verdict, however, reads as follows: "We, the jury, find the defendant guilty as charged."

16

There is no statutory or constitutional requirement for the jury to include in its verdict the words "beyond a reasonable doubt."

Williams' reliance upon *Pinkton v. State*, 481 So.2d 306 (Miss.1985), is misplaced. In *Pinkton* there was a total absence of a written finding of the intent factors required by Miss. Code Ann. § 99-19-101(7). The statute clearly stated that the jury "must" make a written finding that one or more of these circumstances existed before imposing the death sentence. No such finding was made. *Pinkton* is not viable authority for the "beyond a reasonable doubt" argument presented here.

When all of the jury instructions given by the court are read in harmony with the written verdict returned by the jury, it is clear the verdict of the jury resentencing Williams to death complies with the requirements of Miss. Code Ann. § 99-19-101 and Miss. Code Ann. § 99-19-103.

684 So.2d at 1208-09. *See also* **Holland v. State**, 705 So.2d at 352.

¶33.    Grayson replies that *Williams* was decided before the U.S. Supreme Court decisions in *Apprendi v. New Jersey*, 530 U.S. 4466, 120 S.Ct. 2348, 147 L. Ed. 2d 435 (2000) and *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L. Ed. 2d 556 (2002).  However, in a decision handed down on December 4, 2003, this Court has once again evaluated this exact issue.  This Court stated:

We have already addressed this issue in *Williams v. State*, 684 So.2d 1179 (Miss. 1996). There, we noted that there is no authority for the proposition that the jury must actually write the words "beyond a reasonable doubt" in its verdict. *Id.* at 1208. In addition, we presume that a jury will follow a trial court's instructions and do as it is told. *Id.* at 1209. Crawford has given us no reason to believe that this jury departed from its instructions, and we find his claim without merit.

*Crawford v. State*, 867 So.2d 196, 206 (Miss. 2003).  Additionally, these cases are not in conflict with *Apprendi* and *Ring*.  Those cases require that facts must be found by the jury "beyond a reasonable doubt."  Based on the record in this matter, this issue is without merit.

¶34. Finally, Grayson's contention that "there is no indication that the decision was a unanimous one" is without merit. The transcript of the verdict during the sentencing phase clearly shows that the verdict was unanimous. The record reveals the following:

> BY THE COURT: Would you hand your verdict to the clerk, please.
>
> (The clerk retrieved the verdict and handed same to the Court.)
>
> BY THE COURT: All right. The verdict appears to be in order and I'll ask the clerk to read the verdict. Mr. Grayson, would you please stand with your attorneys.
>
> BY THE CLERK: We the jury unanimously find from the evidence beyond a reasonable doubt that the following facts exist at the time of the commission of the capital murder. (1) The fact that the defendant actually killed Minnie Smith; (2) that the defendant attempted to kill Minnie Smith; (3) that the defendant intending the killing of Minnie Smith take place; that the defendant contemplated that lethal force would be used. Next, we the jury unanimously find that the aggravating circumstances of (1) the capital offense was committed for pecuniary gain during the course of a burglary; (2) the capital offense was especially atrocious or cruel; (3) the capital offense was committed by a person under sentence of imprisonment; (4) the capital offense committed for the purpose of avoiding or preventing a lawful arrest are significant to impose the death penalty and that there are insufficient mitigating circumstances to outweigh the aggravating circumstances. And we further find that the defendant should suffer death. And the signature of the foreman.
>
> BY THE COURT: Thank you. Mr. Ishee, do you or Mr. Grayson or Mr. Bailey have anything you want to say before I sentence Mr. Grayson?
>
> BY MR. ISHEE: We would ask that the jury be polled, Your Honor.
>
> BY THE COURT: All right. Ladies and gentlemen, just as we did yesterday, as I told you, whenever a jury comes out with a verdict, either side can request the jury be polled. The single question I have for each of you is, Is this your verdict? Your answer would be either yes or no.

The jurors were individually polled and all answered "yes." The trial court and defense counsel noted that all twelve agreed that "this is their verdict."

18

¶35.    Grayson failed to object to the form of the verdict at the time of trial and on appeal and this claim is procedurally barred from consideration.  Additionally, this claim is without merit, and Grayson is not entitled to any relief.

> **IX. Is imposition of the death sentence prohibited until such time as Grayson has completed the original sentences meted out for offenses committed prior to the sentence imposed in this case?**

¶36.    Grayson makes the novel claim that he cannot be executed until he has fully served his two prior three-year sentences for grand larceny and receiving stolen property.  Grayson relies on Miss. Code Ann. § 47-7-29, which states:

> Any prisoner who commits a felony while at large upon parole or earned-release supervision and who is convicted and sentenced therefor shall be required to serve such sentence after the original sentence has been completed.

The State first argues that this claim was not raised at trial or on direct appeal and cannot be raised for the first time on post-conviction review.  Miss. Code Ann. § 99-39-21(1); *Foster*, 687 So.2d at 1139-40.

¶37.    Without waiving the procedural bar, the State asserts that the "records of the Mississippi Department of Corrections indicate that Grayson's earlier sentences expired or were completed on March 19, 1997.  Thus, Grayson has served his two concurrent sentences for grand larceny and receiving stolen property."  Accordingly, this issue is moot.  The State further points out that a sentence of death becomes paramount to any other sentence imposed.  A death sentenced inmate may be executed at such time as his appeals have been exhausted, no matter what additional sentence he may be under.  This claim is both barred and without merit.

> **X. Where the aggravating factors elevating the charge to a capital offense were not included in Grayson's indictment, must his death penalty be vacated?**

¶38.    Grayson argues that his death sentence must be vacated and a sentence of life imprisonment imposed because the aggravating circumstances were not set forth in the indictment.  This issue was not raised at trial or on direct appeal and cannot be raised for the first time in post-conviction proceedings. Miss. Code Ann. § 99-39-21(1); **Foster**, 687 So.2d at 1139-40.  This Court rejected the identical argument in **Stevens v. State**, 867 So.2d at 225-26.  This issue is both barred and without merit.

**XI.  Is the "avoiding or preventing a lawful arrest" aggravating factor inappropriate in this case and thus is it fundamental error to present it to the sentencing jury for consideration for the imposition of a sentence of death?**

¶39.    Grayson argues that the aggravating circumstance of "avoiding or preventing a lawful arrest" was unsupported by the evidence and should not have been allowed.  Grayson contends that his sentence should be vacated and remanded for a sentence of life imprisonment.  The State argues that this issue was not raised at trial or on direct appeal and cannot be raised for the first time in post-conviction proceedings. Miss. Code Ann. § 99-39-21(1); **Foster**, 687 So.2d at 1139-40.

¶40.    The record reveals that Grayson confessed to killing the victim on May 24, 1996.  In that confession he admitted that the victim knew him and that he killed her because she could identify him. This Court has held:

> Each case must be decided on its own peculiar facts. If there is evidence from which it may be reasonably inferred that a substantial reason for the killing was to conceal the identity of the killer or killers or to 'cover their tracks' so as to avoid apprehension and eventual arrest by authorities, then it is proper for the court to allow the jury to consider this aggravating circumstance.

**Wiley v. State,** 750 So.2d at 1206 (quoting **Chase v. State**, 645 So.2d 829, 858 (Miss. 1994) (quoting **Hansen v. State**, 592 So.2d 114, 153 (Miss. 1991)).  It was proper for the trial court to allow the jury to consider this aggravating circumstance, and this issue is without merit.

20

## XII. Did the trial court err in allowing the jury to consider pecuniary gain and burglary as aggravating circumstances?

¶41. Grayson argues that the trial court improperly doubled the aggravating circumstances that Grayson committed a capital offense for pecuniary gain during the course of a burglary. Grayson contends that his death sentence should be vacated and that he should receive a new sentencing hearing. The State points out that no claim regarding the granting of the aggravating circumstances was raised at trial or on direct appeal. The State contends that Grayson is barred from raising this claim for the first time on post-conviction review. Miss. Code Ann. § 99-39-21(1); *Foster*, 687 So.2d at 1139-40.

¶42. The jury was instructed in accordance with this Court's holding in *Simmons v. State*, 805 So.2d 452 (Miss. 2001). In that case, Simmons argued that the jury was instructed with the non-existent statutory aggravator, "the capital offense was committed for pecuniary gain during the commission of a robbery." *Id.* at 499. This Court rejected Simmons' argument and held that "the use of robbery and pecuniary gain aggravators were, in essence, just one." *Id.* (citing *Turner v. State*, 732 So.2d 937, 955 (Miss. 1999)); *see also* *Willie v. State*, 585 So.2d 660 (Miss. 1991). There was no doubling of the aggravating circumstances, and this issue is both barred and without merit.

## VI. Was Grayson denied his constitutional rights due to the cumulative effect of the errors at his capital trial?

¶43. Grayson argues that the cumulative effect of the errors in his trial entitle him to post-conviction relief. This Court has recognized that several errors taken together may warrant reversal even though when taken separately they do not. *Flowers v. State*, 773 So. 2d 309, 334 (Miss. 2000). We have recently clarified and reaffirmed this principle in *Byrom v. State*, 863 So.2d 836, 847 (Miss. 2004), in which we stated that "upon appellate review of cases in which we find... any error which is not specifically found to be reversible in and of itself, we shall have the discretion to determine, on a case-by-case basis as to

whether such error or errors... may when considered cumulatively require reversal because of the resulting cumulative prejudicial effect." However, none of the claims raised by Grayson in his original post-conviction application or in his supplemental application warrant such relief. This issue is without merit.

## CONCLUSION

¶44. After a thorough review of the entire trial, and as previously discussed under the individual propositions above, we conclude that no reversible error was committed in the trial of this case. Grayson is not entitled to any relief on this claim. The Petition for Post-Conviction Relief and the Supplement/Amendment to Petition for Post-Conviction Relief filed by Blayde Grayson are denied.

¶45. **LEAVE TO SEEK POST-CONVICTION RELIEF DENIED.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**