749 So.2d 1143 (1999)
Jermaine HILL a/k/a Poncho D.J. Hill a/k/a Jermaine Poncho Dereo Hill a/k/a `Poncho', Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01466-COA.
Court of Appeals of Mississippi.
August 3, 1999.
*1145 Carrie A. Jourdan, Columbus, Attorney for Appellant.
Office of the Attorney General by Jolene M. Lowry, Attorney for Appellee.
BEFORE KING, P.J., PAYNE, AND THOMAS, JJ.
*1146 PAYNE, Judge, for the Court:

PROCEDURAL POSTURE AND ISSUES PRESENTED
¶ 1. This case is before the Court on appeal from the judgment of the Lowndes County Circuit Court of conviction of one count of murder and one count of armed robbery and sentence of concurrent terms of life imprisonment and fifteen years. After an unsuccessful effort to gain a new trial, the appellant perfected this appeal raising the following three issues:
I. WHETHER THE APPELLANT'S CONFESSIONS WERE OBTAINED IN VIOLATION OF HIS RIGHTS AS GUARANTEED BY THE 5TH, 6TH, AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE 3, § 14, 26, AND 28 OF THE MISSISSIPPI CONSTITUTION AND WHETHER THE TRIAL COURT'S FAILURE TO SUPPRESS THE STATEMENTS FURTHER DENIED HIS RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 3 OF THE MISSISSIPPI CONSTITUTION?
II. WHETHER THE APPELLANT WAS DENIED HIS RIGHT TO EFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE 6TH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 3, § 26 OF THE MISSISSIPPI CONSTITUTION?
III. WHETHER THE VERDICT WAS IN ACCORDANCE WITH THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE?
Upon review of the record and the submitted arguments, we find no error warranting reversal. Accordingly, we affirm the conviction and sentence in this case.

FACTS
¶ 2. On the morning of April 28, 1995, Hill and three cohorts, Lee Dancer, Oliver Reed Miller, and Uron Bush robbed Charlie's One Stop, a small grocery store located in Columbus, Mississippi. During the course of the robbery, Blanche Welch, the 72 year old clerk on duty, was brutally stabbed and slashed to death, a total of sixteen stab wounds and three slash wounds inflicted on her person.
¶ 3. The events leading up to the murder of Welch were outlined by Hill in his statement to Columbus Police Investigators David Turner and Selvain McQueen. According to Hill's own statement, he chose to not attend school on April 28 at Joe Cook Middle School because he did not want to participate in previously scheduled field days activities. Hill was at the Bell Avenue Grocery store where he encountered Uron Bush. Hill and Bush began walking toward Floyd Dancer's house when they met Dancer and Oliver Reed Miller, the fourth member of the group. Dancer made the comment that he was about to go do "this." Bush asked Dancer if he were serious, while Hill inquired as to what "this" entailed. Hill was informed that Dancer was supposed to be killing someone. Hill and his three companions went to Charlie's One Stop. Bush entered first to see if there were customers, and he came back out. All four then entered the store. Bush instructed Hill to be the lookout. Welch's back was turned away from her young assailant, Bush, and when she turned around he stabbed her in the chest. She fell behind the counter, and then Dancer began kicking her and took the knife from Bush and began stabbing her. Bush opened the cash register and took money, gave Hill $10, and Hill took some bubble gum and a soft drink. Bush threw the knife behind the store, and the four went their separate ways with their respective shares of the loot from the heist.
¶ 4. Following his indictment, Hill was initially tried in September 1996. However, the jury deadlocked, and a mistrial was declared. Subsequently, Hill was retried and convicted of his confessed participation in the robbery and murder. Following *1147 the denial of his motion for JNOV, this appeal was filed.

ANALYSIS AND DISCUSSION

I. WHETHER THE APPELLANT'S CONFESSIONS WERE OBTAINED IN VIOLATION OF HIS RIGHTS AS GUARANTEED BY THE 5TH, 6TH, AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE 3, § 14, 26, AND 28 OF THE MISSISSIPPI CONSTITUTION AND WHETHER THE TRIAL COURT'S FAILURE TO SUPPRESS THE STATEMENTS FURTHER DENIED HIS RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 3 OF THE MISSISSIPPI CONSTITUTION?
¶ 5. As his first assignment of error, Hill maintains that his statements given to law enforcement investigators were obtained in violation of his constitutional rights under the Mississippi and United States Constitutions. Hill asserts that the statements were coerced and involuntary on his part and that the waivers of rights he signed were not understood by him. Further, he says that he was denied access to his parents and that both his parents and his attorney attempted to invoke his constitutional rights on his behalf, but to no avail.
¶ 6. First, we find Hill's claim that he had a right to have access to his parents because of his young age to be without merit. While the Mississippi Code[1] provides for the presence of parents in a youth court environment when a child is interrogated, the supreme court has on two occasions in the last five years held that when a minor is charged with an offense over which the circuit court has jurisdiction, the child's age is not a relevant factor in determining his ability to voluntarily give statements and waive his constitutional rights.
¶ 7. In Blue v. State, 674 So.2d 1184, 1204 (Miss.1996), Blue was convicted of capital murder. At the time of his arrest and interrogation, he was seventeen years old. On appeal, he maintained that he was entitled to have a parent present during the interrogation. Blue was read his rights on June 6, 1992, after which he gave a video and audio taped statement. On June 7, Blue was interrogated again; however, this statement was not recorded. The police officer testified that at the second statement, Blue acknowledged his understanding of his rights, and that no threats or coercion were employed. Also, the officer said he could discern the below average IQ (67), and that Blue commented that he was "used to" being advised of his rights. Another detective testified about the June 6 statement, corroborating the officer's testimony.
¶ 8. In addition, a doctor testified that while Blue was mildly retarded and would not understand a waiver of rights placed before him on paper, he would understand a verbal explanation in elementary terms. The doctor testified that the contents of the statement were more sophisticated than Blue was capable of giving; however, the doctor, on reviewing the videotape of the first statement, saw no indications of pressure or coercion and opined that Blue knew the serious nature of the charges against him.
¶ 9. The trial court ruled that Miss.Code Ann. § 43-21-303(3) did not apply because Blue was not in youth court. Further, the trial judge ruled that the typed rendition of the June 6 statement was inadmissible because it failed to show the prompting of the police officer; thus, the video statement and not the typed version was admitted into evidence. A portion of the June 7 statement was read into the record as it contained additional information. The supreme court held that since the youth *1148 court had no jurisdiction over the case,[2] then Blue's age had no special bearing on the appropriateness of his being interrogated without a parent's being present. As to Blue's mental capacity, the supreme court held that there is no per se rule that mental retardation renders a confession involuntary and inadmissible and that in effect a case by case assessment is necessary. In this case, the court held that Blue's mental capacity did not affect his waiver of rights and statement.
¶ 10. In Dancer v. State, 721 So.2d 583, 587 (Miss.1998), our supreme court also addressed the admissibility of a juvenile's confession and waiver of rights, in this instance a thirteen year old defendant (the co-defendant of Hill in the instant case). As with Blue, the supreme court held to the rule that the totality of the circumstances applied to assessing whether the waiver and confession were properly obtained. The court held the fact that evidence demonstrated that Dancer could read and write, that he had completed sixth grade, and that he was not coerced or threatened sufficiently supported the trial court's finding that the confession was knowingly and voluntarily given.
¶ 11. Finally and most recently, the supreme court decided Clemons v. State, 733 So.2d 266 (¶ 9) (Miss.1999), reaffirming the Blue decision on somewhat similar facts to the case sub judice. In Clemons, the defendant was convicted of capital murder. At the time of his arrest, Clemons was fourteen years old. At the suppression hearing regarding his statement, three officers testified that Clemons was not intoxicated at the time of the statement nor was he coerced in his statement. According to one officer, great care was taken to be sure that Clemons realized his rights given his young age. The supreme court held that when determining the admissibility of a minor's confession, the controlling test is the totality of the circumstances found in the U.S. Supreme Court's decision in Fare v. Michael C., 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979). Id. at (¶ 10). The supreme court reasoned that given the testimony of the officer, and the absence of any evidence regarding a mental impairment, the totality of the circumstances dictated denial of the suppression motion. Id. The supreme court also cited a 1985 decision by the court in a youth court matter where it was held that age alone is not generally a dispositive factor as to voluntariness of a statement and the understanding of rights. Further, despite poor academic performance, the psychiatric report indicated normal intelligence. Id. at (¶ 11). As to Clemons's assertion that he should have been allowed to see his parents and have them present during the interrogation, the court cited Blue in summarily overruling that assignment of error. Id.
¶ 12. It is clear Hill had no constitutional or statutory right to have his parents present during his interrogation for this capital crime. Additionally, pursuant to Clemons, it appears equally certain that Hill's parents could not assert his constitutional rights to counsel and against self-incrimination on his behalf as this matter was in the jurisdiction of the circuit court beyond the protective environment of our youth court. Thus, this issue settled, we turn now to our standard for reviewing the admissibility of a confession: such findings are treated as findings of fact made by a trial judge sitting without a jury, as in any other context. Foster v. State, 639 So.2d 1263, 1281 (Miss.1994). As long as the trial judge applied the correct legal standards, his decision will not be reversed on appeal unless it is manifestly in error or is contrary to the overwhelming weight of the evidence. Foster, 639 So.2d at 1281. The trial court must resolve "whether the accused has been adequately warned, and whether, under the totality of the circumstances, he has voluntarily and intelligently waived his privilege against self-incrimination." Id. *1149 The trial court will not be reversed unless we find manifest error. Hunt v. State, 687 So.2d 1154, 1160 (Miss.1996). As summarized by the Mississippi Supreme Court:
The general rule is that for a confession to be admissible it must have been given voluntarily, and not as the result of any promises, threats or other inducements. The burden is on the prosecution to prove beyond a reasonable doubt that the confession was voluntary. The burden is met and a prima facie case made out by testimony of an officer, or other persons having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward.
Chase v. State, 645 So.2d 829, 838 (Miss. 1994).
¶ 13. In the case sub judice, Investigator Selvain McQueen testified that he informed Hill of his rights and that Hill freely and voluntarily waived his rights by signing the waiver form on May 1, 1995. Also, McQueen testified that as to the May 2, 1995 statement, other officers obtained the waiver prior to McQueen's and Turner's questioning of Hill. Hill signed a handwritten statement compiled by Turner. Turner corroborated McQueen's testimony. Finally, according to trial testimony by Investigator Gary Moore, the May 2 waiver of rights executed by Hill was freely and voluntarily given.
¶ 14. Based on the totality of the circumstances, we find no basis for finding that the waivers of rights given by Hill nor the statements provided by him were not freely and voluntarily given. Accordingly, we overrule this assignment of error.

II. WHETHER THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE 6TH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 3, § 26 OF THE MISSISSIPPI CONSTITUTION?
¶ 15. As his second assignment of error, Hill alleges that he was denied effective assistance of counsel, citing two specific instances: his attorney's failure to re-urge the motion for a change of venue prior to the beginning of the second trial and his attorney's failure to submit a limiting instruction regarding the testimony of his co-defendant, Uron Bush. On our review of the record, we find these alleged instances of ineffective assistance of counsel to be unavailing. Accordingly, we overrule this assignment of error.
¶ 16. Before reaching the merits of Hill's ineffective assistance of counsel claims, we note a disturbing point surrounding this claim: Hill's appellate counsel is the same attorney who represented him at the trial level. The Mississippi Supreme Court has faced a similar situation on at least one other occasion, noting that "in essence, the attorney is claiming his own ineffectiveness." Minnick v. Mississippi, 551 So.2d 77, 98 (Miss.1988) (overruled on other grounds by Minnick v. Mississippi, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990)). In that case, the Mississippi Supreme Court applied the same standard that is applied to all ineffective assistance claims. Id. We pause now to state our belief that it appears to be problematic and inappropriate for an attorney who represents a criminal defendant at trial to represent that same defendant on appeal where the attorney intends to raise an ineffective assistance of counsel claim in that appeal. Four rules of professional conduct are implicated by this situation. First, Rule 1.1 states:
A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.
Miss. Rules of Professional Conduct 1.1 (1998). Second, Rule 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Miss. Rules of Professional Conduct 1.3 *1150 (1998). These two rules are ingrained into every law student, and every attorney must strive to comply with these basic ethical precepts.
¶ 17. In the case sub judice, two other rules of professional conduct are readily applicable given the attorney's argument on appeal. Third, Rule 1.7(b) provides:
(b) A lawyer shall not represent a client if the representation of that client may be materially limited ... by the lawyer's own interests, unless the lawyer reasonably believes:
(1) the representation will not be adversely affected; and
(2) the client has given knowing and informed consent after consultation. The consultation shall include explanation of the implications of the representation and the advantages and risks involved.
Miss. Rules of Professional Conduct 1.7(b) (1998). We find at least one state which has specifically held that an attorney's raising on appeal his own ineffectiveness at trial creates a disciplinable conflict of interest. See In the Matter of Sexson, 666 N.E.2d 402 (Ind.1996).
Fourth, Rule 3.1 states:
A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.
Mississippi Rules of Professional Conduct 3.1 (1998). Again, while an attorney may assert a good faith, non-frivolous argument and may defend a criminal defendant so as to require that every element of a crime be established, raising on appeal one's own ineffectiveness at trial leaves questions as to whether it is a good faith argument, or rather an action to circumvent the judicial process.
¶ 18. Nevertheless, Mississippi has adopted the Strickland v. Washington, 466 U.S. 668, 687-96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) standard for examining ineffective assistance of counsel claims. Shabazz v. State, 729 So.2d 813, 821 (Miss. Ct.App.1998) (citing Eakes v. State, 665 So.2d 852, 872 (Miss.1995)). To prevail on such a claim, a defendant must show that his attorney's performance was so deficient and that the deficiency was so substantial that he or she was deprived of a fair trial. Id. The defendant must prove both elements. Id. (citing Brown v. State, 626 So.2d 114, 115 (Miss.1993); Wilcher v. State, 479 So.2d 710, 713 (Miss.1985)). In any case presenting an ineffective assistance of counsel claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Id. (citing Foster v. State, 687 So.2d 1124, 1129 (Miss.1996)). This is measured by a totality of the circumstances, and thus, the reviewing court must look at counsel's over-all performance. Id. (citing Taylor v. State, 682 So.2d 359, 363 (Miss.1996)). There is no constitutional right to errorless counsel. Id. (citing Foster, 687 So.2d at 1130). "Judicial scrutiny of counsel's performance must be highly deferential." Id. (citing Strickland, 466 U.S. at 689, 104 S.Ct. 2052). A strong presumption holds that counsel's performance falls within the range of reasonable professional assistance. Id. To overcome this presumption, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (citing Schmitt v. State, 560 So.2d 148, 154 (Miss.1990) (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052)).
¶ 19. As to the failure of trial counsel to re-urge the motion for a change of venue, the record shows that prior to *1151 the first trial, an agreement was reached between the prosecutor and the defendant, and an order entered by the trial court, providing that the defendant would not pursue his motion for a change of venue if the prosecutor would not seek the death penalty. Prior to the beginning of the second trial, defense counsel filed an omnibus motion seeking to renew all previously filed motions. Accordingly, as the compromise agreement entered into between the parties in the first trial would be covered by the omnibus motion filed in the second, we find that original agreement to have been applicable in the second trial. As the prosecutor did not seek the death penalty against Hill, his change of venue motion stood withdrawn. Accordingly, this alleged act of ineffective assistance of counsel is meritless.
¶ 20. As to the failure of the trial counsel to submit a limiting instruction regarding Uron Bush's testimony, the issue was presented to the trial judge in Hill's motion for JNOV. The trial court found that the decision not to request a limiting instruction was a tactical decision. We agree. By not requesting a limiting instruction, it is possible that Hill avoided highlighting Bush's testimony. In addition, Bush's testimony was not wholly unsupported by other evidence

III. WHETHER THE VERDICT WAS IN ACCORDANCE WITH THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE?
¶ 21. As his third assignment of error, Hill alleges that the verdict was not consistent with the weight and sufficiency of the evidence. We disagree. Accordingly, we overrule this assignment of error.
¶ 22. First, it is well settled that matters regarding the weight of evidence are to be resolved by the jury. Neal v. State, 451 So.2d 743, 758 (Miss. 1984). As such, our scope of review is limited in considering challenges to the weight of the evidence. In determining whether a jury verdict is against the over-whelming weight of the evidence, this Court must accept as true the evidence presented as supportive of the verdict, and we will disturb a jury verdict only when convinced that the circuit court has abused its discretion in failing to grant a new trial or if the final result will result in an unconscionable injustice. Eakes v. State, 665 So.2d 852, 872 (Miss.1995); Flowers v. State, 601 So.2d 828, 833 (Miss.1992); McFee v. State, 511 So.2d 130, 133-34 (Miss.1987).
¶ 23. As to the challenge to the weight of the evidence, jurors heard testimony from multiple witnessessome for the prosecution, including that of co-defendant Uron Bush and two statements from Hill confessing his participation in the crime and his absence from school that day, and a significant number of alibi and other witnesses who testified on behalf of Hill. The jury was in the best position to weigh the credibility of the witnesses and assess their demeanors. Based on the evidence presented, we cannot say that an unconscionable injustice will result from allowing the conviction to stand.
¶ 24. Second, a challenge to the sufficiency of the evidence requires consideration of the evidence before the court when made; thus, this Court must review the ruling on the last occasion when the challenge was made at the trial level. McClain v. State, 625 So.2d 774, 778 (Miss. 1993). This occurred when the trial court overruled Hill's motion for JNOV. The standard for reviewing an overruled motion for JNOV is well-settled:
[T]he sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [Hill's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of *1152 the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Id. (citations omitted). The evidence consistent with the guilty verdict must be accepted as true. Id.
Viewing the evidence presented in the light most favorable to the State, and giving the State the benefit of all favorable inferences that can be reasonably drawn from the evidence, we cannot say that a reasonable and fair-minded jury could only have found Hill not guilty. Accordingly, we find the evidence was sufficient to sustain the conviction, and we overrule this assignment of error.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY OF CONVICTION OF COUNT I OF ARMED ROBBERY AND SENTENCE OF FIFTEEN YEARS; AND CONVICTION OF COUNT II OF MURDER AND SENTENCE OF LIFE IMPRISONMENT, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. SENTENCES WILL RUN CONCURRENTLY. ALL COSTS OF THIS APPEAL ARE TAXED TO LOWNDES COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, LEE, AND THOMAS, JJ., CONCUR.
IRVING, J., CONCURS IN RESULT ONLY.
MOORE, J., NOT PARTICIPATING.
NOTES
[1] Miss.Code Ann. § 43-21-303 (Supp.1998).
[2] § 43-21-151 (Supp.1998).