# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-KA-00072-SCT

*CHRISTOPHER ARCHER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/01/2004 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | HOLMES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KELSEY LEVOIL RUSHING |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | JAMES H. POWELL, III |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/24/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DIAZ, P.J., EASLEY AND LAMAR, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1.     Christopher Archer was indicted by the grand jury of Holmes County in December 2002 for unlawfully, wilfully, and feloniously robbing John Winston, Jr. of his personal property against his will, and placing him in fear of immediate injury to his person by exhibition of a deadly weapon in violation of Mississippi Code Annotated Section 97-3-79 (Rev. 2006).  Archer's first trial, in October 2003, ended in a mistrial after the jury was unable to reach an unanimous verdict.  Archer was retried the following February with a newly empaneled jury, and found guilty of armed robbery.  On March 1, 2004, the Honorable

Jannie Lewis sentenced Archer to ten years, with two years suspended, in the custody of the Mississippi Department of Corrections. Counsel for Archer filed a notice of appearance, along with a motion for a new trial and a request for a continuance that same day.[1] Judge Lewis granted the continuance, held a hearing on May 19, 2005, and thereupon denied Archer's motion for a new trial.

¶2. Based on the unavailability of the trial transcript, Judge Lewis granted Archer two extensions of time to file an appeal. Notice of appeal having now been filed, Archer seeks review of his conviction.

**FACTS**

¶3. On July 21, 2002, Winston entered the Auto Zone store in Lexington, Mississippi, to purchase some motor oil. At the oil aisle, Winston ran into an acquaintance. The two exchanged greetings and soon began discussing engine heads for an '89 Mustang. During their conversation, another individual whom Winston had never seen before interjected and said he knew where some heads were located nearby, and could take Winston there. Winston and the individual, whom he later identified as Archer, left the store and got into Winston's vehicle.

¶4. Winston testified that as he turned his head to back out of his parking spot, Archer reached over and stuck a "pistol" into Winston's side and said, "Give me your m*** f*** money." "Scared," Winston reached into his pocket and handed Archer $60. Archer then

---

[1] The record indicates that Archer's counsel for this appeal was introduced to the jury by Archer's lead counsel during voir dire and assisted during trial.

said, "Snap that chain off your neck."  Winston yanked a gold herringbone necklace from around his neck and handed it to Archer.  Archer instructed Winston to leave the store's parking lot and to drive towards Saints Academy.  When they reached the school, Archer told Winston to make a U-turn onto Balance Due Road.  Once on Balance Due, the two rode throughout the area, turning onto various roads and lanes, before eventually arriving back onto the main road.  Again on Balance Due, they approached a bridge where Archer instructed Winston to stop his car.  Winston complied.  At that point, Archer looked directly over at Winston and said, "I ought to kill your m*** f*** a**."  Archer then stepped out of the vehicle, told Winston to "get the f*** out of here," and left on foot.

¶5.     Winston immediately drove back to the Auto Zone and told the store's manager that he had just been robbed.  A store employee contacted a police officer who happened to be standing across the street at the Junior Food Mart.  Officer Kenny Wilson, who was helping a stranded motorist at the time, told Winston to go to the police station and wait for him there.  Officer Wilson arrived shortly thereafter, and the two drove back to the Auto Zone.  The officer conducted an investigation, during which time someone (the record does not say who) said that Archer was the person who had left with Winston.  Officer Wilson, who testified that he knew Archer, drove Winston back out to the Balance Due area to look for Archer, but to no avail.

¶6.     On July 27, Winston swore out an affidavit concerning the events on July 21.  The next morning, Officer Wilson called Deputy Sam Chambers at the Holmes County Sheriff's Department, and asked the deputy if he had a picture of Archer that could be used in a photo

3

lineup. The deputy found one in his computer, and printed it along with two other individuals' photographs. The lineup was conducted later that afternoon in the deputy's office. In the presence of Officer Wilson and Deputy Chambers, Winston viewed each photograph. He picked Archer's picture out of the three and stated to the officers that this was the person who had robbed him on July 21. A warrant was then issued for Archer's arrest.

¶7. Three weeks later, on August 18, Archer was stopped by the Goodman police on Highway 15 and detained there for an unrelated incident. Officer Wilson, having informed the Goodman police to be on the lookout for Archer, was called to the scene. Upon arrival, Officer Wilson asked Archer if he had a weapon inside his vehicle; Archer said that he did. The officer retrieved a .380 caliber handgun from Archer's car, and took Archer into custody.

## DISCUSSION

¶8. Archer presents two claims on appeal. First, Archer charges that he was provided ineffective assistance of counsel due to the following omissions by his counsel at trial: (1) failure to seek suppression of the gun found in Archer's possession at the time of his arrest; (2) failure to use a peremptory challenge on juror number 21, who disclosed during voir dire that she personally knew the victim, and had, herself, been the victim of a robbery; and (3) failure to request a motion for dismissal at the close of the state's case and again at the end of the defense's case. Archer argues that these omissions constituted a series of errors by his trial counsel which severely prejudiced his defense and deprived him of his constitutional right to effective assistance of counsel.

4

¶9. Secondly, Archer argues that the trial court erred by denying his challenge for cause as to juror number 11, due to her disclosure that she casually knew the victim in this case.[2] In addition, Archer argues that, despite his counsel's failure to challenge juror number 21, the trial court nevertheless erred by not sua sponte excusing juror 21 from the venire. Thus, by having both jurors 11 and 21 empaneled on his jury, Archer claims he was denied his constitutional right to a trial by a fair and impartial jury.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL.

¶10. The appellant's ineffective-assistance-of-counsel claim will not be addressed on this direct appeal. As the record indicates, appellant's counsel on appeal also assisted the appellant's lead counsel at trial.

¶11. This Court was presented a similar claim in *Minnick v. State*, 551 So. 2d 77 (Miss. 1998) (*overruled on other grounds*), where the defendant's counsel on appeal also had represented the defendant at trial and was claiming in the defendant's appeal that he provided ineffective assistance of counsel during trial. The *Minnick* Court cursorily acknowledged the unusualness of an attorney claiming his own ineffectiveness, but nevertheless addressed the merits of the claim and applied the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064-65, 80 L. Ed. 2d 674, 693-95 (1984),

_____

[2] Appellate counsel for Archer stated in his brief that juror number 11 had also been victim to a robbery, but the record reveals this to be inaccurate. During the challenge stage of jury selection, Archer's trial counsel moved to strike juror number 11 for cause on the basis that she knew the victim and had, herself, been a robbery victim. However, juror number 11 did not respond when the court asked the jurors if anyone had ever been the "victim of a violent crime, armed robbery, or mugging."

requiring the defendant to show: (1) that his counsel's performance was deficient, and (2) that the deficiency prejudiced his defense. *Id.* at 98-99. *Minnick* held that the defendant's appellate counsel failed to demonstrate that his representation at trial was either deficient or that his performance had prejudiced his client with an unfair trial. *Id.* at 99.

¶12. Research failed to locate another case in which this Court was petitioned to review a self-ineffectiveness claim. However, the Court of Appeals has been presented with such a claim on at least two occasions. *See Lyle v. State*, 908 So. 2d 189, 197 (Miss. Ct. App. 2005); and *Hill v. State*, 749 So. 2d 1143, 1149-50 (Miss. Ct. App. 1999).

¶13. In *Hill*, the Court of Appeals readily called attention to the inappropriateness of an attorney who represents a criminal defendant at trial raising on appeal the claim of his own ineffective trial assistance, and laid out four professional-conduct violations arising from such representation. *See Hill,* at 1149-50. The court noted that raising this kind of error on appeal "leaves questions as to whether it is a good faith argument, or rather an action to circumvent the judicial process." *Id*. at 1150. However, based on *Minnick*, the Court of Appeals addressed the merits of the claim, applied the *Strickland* test and ruled Hill's ineffectiveness claim to be without merit. *Id.* at 1150-51.

¶14. Faced with another self-ineffectiveness claim in *Lyle*, the Court of Appeals, citing *Minnick,* again addressed the merits of appellate counsel's argument that he had provided his client ineffective legal assistance during trial. *Lyle*, 908 So. 2d at 197-98. After applying the *Strickland* test, the court held the argument to be without merit, but not without noting, once again, the problematic nature such a claim presents. *Id.* at 197-98. We agree.

6

¶15.    Ordinarily, ineffective-assistance-of-counsel claims are more appropriately brought

during post-conviction proceedings.  This is because during direct appeals the Court is

limited to the trial court record in its review of the claim, and there may be instances in which

insufficient evidence exists within the record to address the claim adequately.  ***Wilcher v.***

***State***, 863 So. 2d 776, 825 (Miss. 2003).  In such a case, the appropriate procedure is to deny

relief, preserving the defendant's right to argue the issue through a petition for post-

conviction relief.  ***Read v. State***, 430 So. 2d 832, 837 (Miss. 1983).

¶16.    However, this Court may address an ineffectiveness claim on direct appeal if the

presented issues are based on facts fully apparent from the record.  M.R.A.P. 22; *see also*

***Havard v. State***, 928 So. 2d 771, 786 (Miss. 2006).  Mississippi Rule of Appellate Procedure

22 was amended in 2005 to clarify that both appellate courts have the authority to address

and rule on the merits for these types of issues during direct appeals when proper, and now

reads as follows:

> **(b) Post-conviction issues raised on direct appeal**.  Issues which may be
> raised in post-conviction proceedings may also be raised on direct appeal *if*
> *such issues are based on facts fully apparent from the record.*  Where the
> appellant is represented by counsel who did not represent the appellant at trial,
> the failure to raise such issues on direct appeal shall constitute a waiver barring
> consideration of the issues in post-conviction proceedings.

M.R.A.P. 22(b) (2005) (emphasis added).[3]  For this case, the second sentence of the rule,

which did not change, is of primary relevance to the matter herein before the Court.

---

[3]   At the time of the appellant's trial in 2002, former Rule 22 was in effect and is
therefore controlling.  The former rule did not contain the language, "if such issues are based
on facts fully apparent from the record."

¶17. The sentence intentionally serves a dual purpose. Under judicial-economy considerations, the Court presumes that new eyes on appeal, having thoroughly reviewed the trial court proceedings, will know whether or not certain claims, such as those charging ineffective trial assistance, are meritorious. Thus, if an issue or claim is ripe and based on matters fully enveloped within the record, it should be brought during direct appeal to avoid the risk of being deemed waived.

¶18. The Court is aware, however, that in many instances a criminal defendant's trial counsel may continue to represent the defendant in his or her appeal. Such is perfectly acceptable, and in many situations may be the better course. But in order to safeguard the defendant's constitutional rights, the procedural bar that otherwise would apply to an ineffective-trial-assistance issue when new counsel is handling the defendant's appeal does not apply when appellant counsel was also the defendant's trial counsel. This is a matter of protective necessity, and is intended to ensure that a convicted criminal defendant will not be precluded from the opportunity to raise the claim that he or she was denied his or her constitutional right to adequate legal representation. *Read*, 430 So. 2d at 837.

¶19. When a criminal defendant is represented on appeal by counsel who actively participated in the defendant's defense at trial, a charge that the defendant was provided ineffective assistance of counsel runs counter to both intentions. First and foremost, as this Court stated in *Read*, "it is absurd to fantasize that [a] lawyer might effectively litigate the

8

issue of his own ineffectiveness." ***Read***, 430 So. 2d at 838.[4]  Second, were this Court to entertain such a claim, and thereafter deny it on the merits, under the doctrines of collateral estoppel and res judicata the criminal defendant would be precluded from re-raising the issue(s) or the claim in a post-conviction proceeding.  And third, apart from the procedural and substantive reasons, this type of claim, as the Court of Appeals aptly noted, leaves questions.

¶20.    Thus, a self-ineffectiveness claim is absolutely inappropriate and must not be permitted.  In the event a reviewing court finds itself presented with such a claim, it should not address and rule upon the matter during a direct appeal, no matter how clearly the record indicates baselessness.[5]  The only means by which a reviewing court adequately can ensure that a criminal defendant represented on appeal by his or her trial counsel has the opportunity at least to fully raise an ineffectiveness claim is via a post-conviction proceeding.

¶21.    Our ruling, of course, is not meant to prevent the court from acting on direct appeal in the extraordinary event that the record clearly shows ineffective trial assistance of constitutional dimensions by the same counsel representing the defendant on appeal.  In any such case, the reviewing court simply would formally address the merits of the

---

[4] ***Read*** was not addressing a self-ineffectiveness claim, but rather was reasoning why ineffective-assistance-of-counsel claims, as the state was trying to argue, must not be held to the procedural standard–requiring questions raised on appeal to have first been preserved in the trial court below.

[5] Apparently, this was the reason for the ***Minnick*** Court doing so.  ***Minnick***, 551 So. 2d at 99.

9

ineffectiveness issue therein invoked prior to remanding the case for a new trial. ***Read***, 430 So. 2d at 841. In the case sub judice, having carefully and thoroughly reviewed the record herein before this Court, we find no such instance.

¶22. The record reveals that Archer's appellant counsel apparently only assisted Archer's lead counsel at trial. The record does not indicate to what extent he was involved; however, his participation in the appellant's defense at trial regardless of his role, by imputation, ascribes any potential claim of deficient and prejudicial trial performance unto himself as well, and consequently constitutes a self-ineffectiveness claim. Therefore, Archer's ineffective-assistance-of-counsel claim is dismissed without prejudice. Archer will be allowed, if he chooses, to file an appropriate post-conviction proceeding raising the ineffective-assistance-of-counsel issue. If his application states a prima facie claim, he then will be entitled to an evidentiary hearing on the merits of that issue in the Circuit Court of Holmes County. Once the issue has been formally adjudicated by the circuit court, Archer will also have the right to appeal that court's decision.

## II. WHETHER THE DEFENDANT WAS DENIED A RIGHT TO A TRIAL BY A FAIR AND IMPARTIAL JURY.

### A. Whether the trial court erred by denying the defendant's request that juror number 11 be removed on challenge for cause.

¶23. Under settled law in Mississippi, "a juror who may be removed on challenge for cause is one against whom a cause for challenge exists that would likely effect (sic) his competency or his impartiality at trial." ***Evans v. State***, 725 So. 2d 613, 653 (Miss. 1997), *cert. denied*, 525 U.S. 1133, 119 S. Ct. 1097, 143 L. Ed. 2d 34 (1999) (quoting ***Billiot v. State***, 454 So.

10

2d 445, 457 (Miss. 1984), *cert. denied*, 469 U.S. 1230, 105 S. Ct. 1232, 84 L. Ed. 2d 369 (1985), *reh'g denied*, 470 U.S. 1089, 105 S. Ct. 1858, 85 L. Ed. 2d 154 (1985)); ***Armstrong v. State***, 214 So. 2d 589, 593 (Miss. 1968), *cert. denied*, 395 U.S. 965, 89 S. Ct. 2109, 23 L. Ed. 2d 750 (1969) ("Those [jurors] who say that they could follow the evidence and the instructions of the court should be retained, and those who cannot follow the instructions of the court should be released").  Finding a prospective juror competent to sit and impartially hear a criminal matter is a judicial question reserved for the trial judge, and will not be disturbed unless clearly wrong.  ***Dennis v. State***, 555 So. 2d 679, 682 (Miss. 1989); ***Walls v. State***, 371 So. 2d 411, 413 (Miss. 1979).

¶24.    In his appeal, the defendant offers nothing more than a conclusive assertion that the trial court erred by denying his challenge for cause as to juror number 11, based on her disclosure that she casually knew the victim in this case from having seen him in the community.  This is not enough to place the trial court in error.

¶25.    A tangential relationship with the victim in a criminal case, by itself, is not a sufficient reason to exclude a potential juror for cause. *See **Bell v. State***, 725 So. 2d 836, 846 (Miss. 1998) ("Mere acquaintance or even family relationships with parties or those related to parties is not sufficient to require that a juror be excused for cause").  Moreover, the record reveals that, following the juror's disclosure, the trial court conducted a followup inquiry.  The juror affirmatively indicated this relationship would not prevent her from being fair and impartial, nor would it affect her ability to render judgment based solely on the evidence

11

presented. The trial court's decision not to grant the defendant's causal challenge was a discretionary finding, which the defendant has failed to show was wrongly decided.

¶26. Furthermore, the defense accepted juror number 11 with four peremptory challenges remaining. A party who chooses not to challenge a juror peremptorily when he has unused challenges may not thereafter seek to put the trial court in error because the court declined to permit the juror to be challenged for cause. *Davis v. State*, 660 So. 2d 1228, 1244 (Miss. 1995) (citing *Mettetal v. State*, 602 So. 2d 864 (Miss. 1992)); *Hansen v. State*, 592 So. 2d 114 (Miss. 1991), *cert. denied,* 504 U.S. 921, 112 S. Ct. 1970, 118 L. Ed. 2d 570 (1992), *reh'g denied,* 505 U.S. 1231, 112 S. Ct. 3060, 120 L. Ed. 2d 924 (1992). To hold otherwise would allow the defendant to invite error and later take advantage of it on appeal.[6] The appellant's argument that the trial court erred by refusing to remove juror number 11 for cause is without merit.

**B. Whether the trial court erred by not sua sponte removing juror number 21 from the venire**.

---

[6] In *Hansen v. State*, 592 So. 2d 114, 129-30 (Miss. 1991), *cert. denied,* 504 U.S. 921, 112 S. Ct. 1970, 118 L. Ed. 2d 570 (1992), *reh'g denied,* 505 U.S. 1231, 112 S. Ct. 3060, 120 L. Ed. 2d 924 (1992), this Court held:

> The reason for the rule is that the appellant has the power to cure substantially any error so long as he has remaining unused peremptory challenges. We would put the integrity of the trial process at risk were we to allow a litigant to refrain from using his peremptory challenges and, suffering an adverse verdict at trial, secure reversal on appeal on grounds that the circuit did not do what appellant wholly had power to do.

12

¶27. Archer's argument that juror 21 should have been removed on the court's own motion charges essentially that the juror's relationship with the victim and her circumstance as a prior victim herself disqualified her as a competent juror in this case. Archer submits that, regardless of his counsel's failure either to challenge the juror for cause or to peremptorily strike her from the venire panel, the trial court nevertheless was obligated to exclude this juror based on her disclosures.

¶28. Again, Archer provides this Court nothing other than a blanket assertion that the trial court erred. Lack of reasoning notwithstanding, Archer's contention is rejected on both procedural and substantive grounds. Procedurally, a party's failure to object to a juror's competency to sit before the jury was empaneled constitutes, based on unequivocal principles, a procedural bar. *See Myers v. State*, 565 So. 2d 554, 557 (Miss. 1990) ("[A] party who fails to object to the jury's composition before it is empaneled waives any right to complain thereafter"). In limited circumstances, this Court will set aside the procedural bar and reverse when it is clear that a juror disqualified under Mississippi Code Annotated Section 13-5-67 was not removed before the jury retired to consider its verdict. *Caldwell v. State*, 381 So. 2d 591, 594 (Miss. 1980). Essentially, this requires a showing that the juror in question has been convicted of an "infamous crime" or has withheld information or misrepresented material facts that would have provided a legitimate basis for challenge. Miss. Code Ann. §13-5-67 (Rev. 2002); *Myers v. State*, 565 So. 2d at 558; *see also Odom v. State*, 355 So. 2d 1381, 1383 (Miss. 1978).

¶29. Archer has failed to show either. There is nothing in the record to indicate that juror 21 had been convicted of an infamous crime at the time she was empaneled to render judgment in this case. Nor is there any indication that juror 21 withheld or misrepresented any information or material facts that otherwise would have made her incompetent to sit as a fair and impartial juror throughout, or that disadvantaged the defense in its decision whether to challenge her for cause or to exercise a peremptory challenge.[7]

¶30. Substantively, under Mississippi law, any person not disqualified under Mississippi Code Annotated Section 13-5-1, who will make oath that he or she is impartial, is competent to sit as a juror in a criminal case. Miss. Code Ann. § 13-5-79 (Rev. 2002). The trial judge whose duty is to see that a competent, fair, and impartial jury is empaneled, is empowered with broad discretion to determine whether a prospective juror can be fair and impartial–notwithstanding the juror's admission under oath that he or she will be. Miss. Code Ann. § 13-5-79 (Rev. 2002); *Burt v. State*, 493 So. 2d 1325, 1327 (Miss. 1986). This Court recognizes that the trial judge is in the best position to determine whether the jury as selected was fair and impartial, and therefore yields to a trial court's discretionary finding that a competent jury, under its oath to be fair and impartial, was empaneled to render judgment, and will not reverse absent clear abuse of that discretion. *Caston v. State*, 823 So. 2d 473, 498 (Miss. 2002); *Bell v. State*, 725 So. 2d at 846.

---

[7] The record indicates that the defense had three peremptory challenges remaining at the time it accepted juror number 21.

¶31. The record shows juror 21 was forthright in each of her responses to questions posed during voir dire. The juror affirmatively indicated that neither her relationship with the victim in this case, nor her prior circumstance as a robbery victim, would prevent her from being fair and impartial, nor would it affect her ability to render judgment based solely on the evidence presented. Archer has failed to show why the trial court's belief in the juror's oath to remain fair and impartial throughout was error. Archer's claim that the trial court erred by not sua sponte removing juror number 21 is without merit.

**CONCLUSION**

¶32. The judgment of the Circuit Court of Holmes County is affirmed.

¶33. **CONVICTION OF ARMED ROBBERY AND SENTENCE OF TEN (10) YEARS, WITH TWO (2) YEARS SUSPENDED, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. LAMAR, J., CONCURS IN RESULT ONLY. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**